11-4884
*United States v. Jaafar*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

   At a stated Term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, at 40 Foley Square, in the City of New York, on the 14th day of December, two thousand fifteen.

Present:    ROBERT A. KATZMANN,
                     *Chief Judge*,
            ROBERT D. SACK,
                     *Circuit Judge*,
            EDGARDO RAMOS,
                     *District Judge*.[*]

_____

UNITED STATES OF AMERICA,

                     *Appellee*,

                     v.                          No. 11-4884

HENRY AL HALABI, HAIDAR AYOUB, YOUSSEF AYOUB,
HUSSEN ALI CHAHINE, aka HUSSEIN, YOUNES EL SALEH,
MOHAMAD HASSAN ELREDA, HASSAN ALI HAMDAN,
WADIE JAAFAR, ALI ATA SALEH, MAHDI TALEEB,

                     *Defendants*,

AYMAN JAAFAR, aka ABU JAMEEL, aka MOHAMMAD,

                     *Defendant-Appellant*.

_____

For Appellee:                        WALTER M. NORKIN, Assistant United States Attorney (Susan
                                     Corkery, Assistant United States Attorney, *on the brief*), *for* Kelly T.

_____

[*] The Honorable Edgardo Ramos, United States District Judge for the Southern District of New York, sitting by designation.

1

Currie, Acting United States Attorney for the Eastern District of New York, Brooklyn, NY.

For Defendant-Appellant:      JANE S. MEYERS, Brooklyn, NY.

Appeal from the United States District Court for the Eastern District of New York (Irizarry, *J.*).

**ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED,** and **DECREED** that the judgment of the district court is **AFFIRMED**.

Defendant-appellant Ayman Jaafar appeals from a judgment of conviction and sentence entered on November 17, 2011 by the United States District Court for the Eastern District of New York (Irizarry, *J.*). Jaafar pleaded guilty to one count of trafficking in counterfeit goods in violation of 18 U.S.C. § 2320(a), and was sentenced principally to two years' incarceration to be followed by three years of supervised release. We previously issued a summary order affirming as to the procedural and substantive reasonableness of Jaafar's sentence but remanding for further factfinding relating to Jaafar's claim of ineffective assistance of counsel pursuant to *United States v. Jacobson*, 15 F.3d 19, 22 (2d Cir. 1994). *See United States v. Al Halabi*, 563 F. App'x 55, 58 (2d Cir. 2014). We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

Jaafar, a citizen of Lebanon, argues that his prior counsel rendered constitutionally ineffective assistance by failing to advise him of the immigration consequences of pleading guilty. We analyze claims of ineffective assistance of counsel under the two-prong standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). Under that standard, the defendant has the burden to establish (1) that counsel's representation "fell below an objective standard of reasonableness" as measured under "prevailing professional norms," and (2) that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 688, 694.

2

The *Strickland* standard applies to counsel's duty to advise a defendant of the immigration consequences of a guilty plea. *See Padilla v. Kentucky*, 559 U.S. 356, 366 (2010). Regarding the first prong of *Strickland*, the Supreme Court has explained that "when the deportation consequence [of a guilty plea] is truly clear, … the duty to give correct advice is equally clear." *Id.* at 369. Regarding the second prong, the defendant "must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." *Id.* at 372. In making this determination, courts consider "all relevant factors," *Gonzalez v. United States*, 722 F.3d 118, 132 (2d Cir. 2013), including "whether pleading guilty gained him a benefit in the form of more lenient sentencing," and "whether the defendant advanced any basis for doubting the strength of the government's case against him," *Chhabra v. United States*, 720 F.3d 395, 408 (2d Cir. 2013). Both prongs of the *Strickland* analysis are mixed questions of law and fact. *Id.* at 406. We review the district court's "findings as to basic, primary, or historical fact" for clear error, and its "ultimate rulings as to *Strickland*'s components, and its ultimate decision as to whether counsel's performance violated the defendant's Sixth Amendment rights" de novo. *Id.* at 406–07 (internal quotation marks omitted).

On remand, the district court received affidavits from Jaafar and from his prior counsel, Paul Lieber, and held an evidentiary hearing at which both Jaafar and Lieber testified. After the hearing, the court issued an opinion holding that Lieber's performance fell below an objective standard of reasonableness because he advised Jaafar that he "may" be deported, when in fact deportation is mandatory for the offense to which Jaafar pleaded guilty. However, the court held that Jaafar failed to demonstrate a reasonable probability that, had he received effective assistance of counsel, he would have proceeded to trial rather than pleading guilty. The court

3

held that, in light of the government's overwhelming evidence of Jaafar's guilt, it would not have been rational to do so.

On appeal, the government does not dispute the district court's conclusion that Lieber's performance was constitutionally deficient. We agree that, where the law clearly dictates that removal is presumptively mandatory, a defense attorney's failure to advise his client of that fact falls below an objective standard of reasonableness. *See Padilla*, 559 U.S. at 369 (finding deficiency where "[t]he consequences of [the defendant's] plea could easily be determined from reading the removal statute, his deportation was presumptively mandatory, and his counsel's advice was incorrect"). But even if Lieber rendered ineffective assistance, Jaafar has not carried his burden to demonstrate prejudice.

As the district court found and Jaafar does not dispute, the evidence against him was overwhelming. Jaafar was arrested at a location containing over 3,000 counterfeit athletic jerseys. At the time of his arrest, the government seized a bag containing Jaafar's wallet, the keys to the location, and several thousand dollars in cash. It also intercepted cellular phone conversations in which Jaafar discussed counterfeit clothing trafficking. Jaafar fails to offer any basis on which he could have contested his guilt at trial. Thus, conviction was a virtual certainty, and the question was not whether Jaafar would be deported, but when. Under these circumstances, a rational defendant would do exactly what Jaafar did, namely, plead guilty and attempt to minimize his custodial sentence. Indeed, Jaafar received at least a modest benefit in exchange for his guilty plea, namely acceptance-of-responsibility credit, and he admitted that he "believed that [he] would get a worse sentence if [he] were convicted at trial." Def. Supp. App. 54. Therefore, Jaafar has not carried his burden to demonstrate that it would have been rational for him to go to trial. We note that our review is limited to assessing whether Jaafar has

demonstrated ineffective assistance of counsel. We are without license to review the government's charging decisions, which had obvious consequences as to the penalty.

Jaafar argues, however, that it would have been rational for him to take his chances and go to trial in light of the dangers he would face upon his return to Lebanon. He argues that had he been properly informed, he would not have pleaded guilty because the slim chance of an acquittal was preferable under the circumstances to certain deportation. But Jaafar has provided no legal basis for taking his personal circumstances into account in the *Strickland* inquiry, which is focused on whether deficient performance by defense counsel had an effect on the outcome of legal proceedings. *See Strickland*, 466 U.S. at 694. Again, Jaafar has offered no reason to doubt the strength of the government's case against him, and "[a]n assessment of the likelihood of a result more favorable to the defendant must exclude the possibility of arbitrariness, whimsy, caprice, 'nullification,' and the like." *Id.* at 695.[1]

---

[1] Jaafar also argues that the district court clearly erred in finding his testimony not credible. That finding, Jaafar argues, relied on the district court's mistaken understanding that he had testified that Lieber not only failed to advise him that deportation was mandatory, but failed to discuss the immigration consequences of his plea with him at all. However, Jaafar testified that Lieber "did not mention the immigration consequences, and he was insisting that he's going to get me probation" and that "[h]e was focused more on other issues. He did not talk about immigration consequences." Def. Supp. App. 55, 57. In light of these and other statements that Jaafar made at the hearing, the district court's understanding of Jaafar's testimony was permissible. *See United States v. Iodice*, 525 F.3d 179, 185 (2d Cir. 2008) ("[W]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." (quoting *United States v. Sash*, 396 F.3d 515, 521 (2d Cir. 2005))). In any event, even if the district court had credited Jaafar's testimony that he would have insisted on going to trial, Jaafar would still have been unable to meet his burden to prove that it would have been rational for him to do so.

We have considered the rest of Jaafar's arguments and find them not persuasive.

Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk
