******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

PIOTR BUDZISZEWSKI *v.* COMMISSIONER OF
CORRECTION
(SC 19599)

Rogers, C. J., and Palmer, Zarella, Eveleigh, McDonald, Espinosa and
Robinson, Js.*

*Argued March 29—officially released August 16, 2016*

*Ronald G. Weller*, senior assistant state's attorney,
with whom, on the brief, were *Michael Dearington*,
state's attorney, and *Adrienne Maciulewski*, deputy
assistant state's attorney, for the appellant
(respondent).

*Damon A. R. Kirschbaum*, with whom, on the brief,
was *Vishal K. Garg*, for the appellee (petitioner).

*Opinion*

ROGERS, C. J. In this appeal, we consider what advice criminal defense counsel must give to a noncitizen client who is considering pleading guilty to a crime when federal law prescribes deportation as the consequence for a conviction. In *Padilla* v. *Kentucky*, 559 U.S. 356, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010), the United States Supreme Court concluded that the federal constitution's guarantee of effective assistance of counsel requires criminal defense counsel to accurately advise a noncitizen client of the immigration consequences of pleading guilty to a crime, as described in federal law. Id., 360, 368–69. For crimes designated as aggravated felonies, including the crime at issue in the present case, federal law mandates deportation almost without exception. See id., 363–64, 368. We conclude that, for these types of crimes, *Padilla* requires counsel to inform the client about the deportation consequences prescribed by federal law. See id., 374. Because noncitizen clients will have different understandings of legal concepts and the English language, there are no precise terms or one-size-fits-all phrases that counsel must use to convey this message. Rather, courts reviewing a claim that counsel did not comply with *Padilla* must carefully examine all of the advice given and the language actually used by counsel to ensure that counsel explained the consequences set out in federal law accurately and in terms the client could understand. In circumstances when federal law mandates deportation and the client is not eligible for relief under an exception to that command, counsel must unequivocally convey to the client that federal law mandates deportation as the consequence for pleading guilty.

In this appeal, we also consider whether, in addition to advising the client what federal law *mandates*, *Padilla* requires counsel to also advise a client of the actual likelihood that immigration authorities will *enforce* that mandate. Although *Padilla* requires that counsel explain the meaning of federal law, it does not require counsel to predict whether or when federal authorities will pursue the client in order to carry out the deportation proceedings required by law. Nevertheless, if counsel chooses to give advice or the client inquires about federal enforcement practices, counsel must still convey to the client that once federal authorities apprehend the client, deportation will be practically inevitable under federal law.

In light of these clarifications, we reverse the judgment of the habeas court in the present case and remand the case to that court for a new trial applying these standards.

I

The petitioner, Piotr Budziszewski, is a Polish national who emigrated to the United States and later

became a lawful permanent resident. Several years after arriving in the United States, he twice sold narcotics to undercover police officers, leading to his arrest on various drug offenses.

The state charged the petitioner with two counts of selling narcotics by a person who is not drug-dependent in violation of General Statutes § 21a-278 (b), and two counts of possession of a narcotic substance with intent to sell in violation of General Statutes § 21a-279 (a). The charges carried a minimum sentence of five years imprisonment with a maximum term of twenty years. General Statutes § 21a-278 (b).

The petitioner hired Attorney Gerald Klein to defend him. Klein negotiated a plea agreement with the state that would allow the petitioner to plead guilty to one count of possession of a controlled substance with intent to sell in violation of General Statutes § 21a-277 (a). This offense did not carry a mandatory minimum period of incarceration; see General Statutes § 21a-277 (a); and the state agreed to a sentence recommendation of five years of incarceration, execution suspended after no more than one year. The petitioner accepted the plea arrangement and the trial court sentenced the petitioner to a period of incarceration of five years, execution suspended after ninety days, and a period of probation.

After serving forty-five days of incarceration, the state released the petitioner from custody. Because of his felony conviction, federal authorities detained the petitioner after his release from state custody and began proceedings to remove him from the country. Federal authorities entered a final order of removal and the petitioner exhausted all avenues for appeal from that order.

After federal authorities had detained the petitioner, he filed the habeas petition at issue in the present case. He claimed, among other things, that Klein, his criminal trial counsel, rendered ineffective assistance by failing to advise him of the immigration consequences of his guilty plea, as required by *Padilla* v. *Kentucky*, supra, 559 U.S. 374, and he asked that his conviction be vacated.

The habeas court held a trial on the petition. At trial, Klein testified about his representation of the petitioner and the immigration advice he gave. He could not remember all of his conversations with the petitioner on the subject, but he did testify about those portions he remembered and the content of the advice he usually gives to noncitizen clients in circumstances similar to those of the petitioner. The record shows that in accordance with his usual practice, Klein may have advised the petitioner, among other things, that "if [the law is] strictly enforced, it will result in [deportation], but it's been my experience that [the law is] not strictly

enforced. So you take a chance." The petitioner also testified at the hearing, but he asserted that Klein did not provide any advice whatsoever about immigration consequences. The petitioner further explained that had he known of the likelihood of deportation, he would not have pleaded guilty, but would have insisted on going to trial and risking a lengthier period of incarceration.

The habeas court granted the petition and ordered that the petitioner's conviction be vacated. In its memorandum of decision, the habeas court addressed the petitioner's claim by first setting out the legal standard under *Padilla*. The habeas court determined that the petitioner's conviction qualified as an " 'aggravated felony' " under federal immigration law, making the petitioner subject to deportation, and further determined that the petitioner did not fall within any exception or exclusion that would allow him to remain in the United States. As a result, the court concluded that Klein was required to inform the petitioner that his plea of guilty to an aggravated felony made him "subject to mandatory deportation . . . ." After setting forth the legal standard, the habeas court described and quoted different parts of Klein's habeas testimony, noting several times that the quoted portions failed to contain the specific warning that "the plea would subject the petitioner to mandatory deportation . . . ." The habeas court explained its findings and conclusions as follows: "Although the court does not credit the petitioner's claim that there was never any discussion about the immigration consequences of his plea during Attorney Klein's representation, the court does find, when viewing the totality of the petitioner's testimony with that of Attorney Klein's, that what minimal discussion they did have failed to contain the specific advice from counsel required under *Padilla* that the plea would subject the petitioner to mandatory deportation under [f]ederal law." Other than its statement that Klein's advice fell short of the *Padilla* standard, the habeas court did not make any findings about the content of Klein's advice to the petitioner, nor did it identify which parts, if any, it credited from the petitioner's and Klein's testimony. After concluding that Klein's advice was deficient, the habeas court went on to conclude that Klein's deficient advice prejudiced the petitioner, leading it to grant the petitioner habeas relief.

This appeal by the respondent, the Commissioner of Correction, followed.

## II

### A

On appeal, the respondent claims that the habeas court improperly interpreted and applied the standards set forth in *Padilla*. This claim presents a question of law over which we exercise plenary review. *Anderson*

v. *Commissioner of Correction*, 313 Conn. 360, 375, 98 A.3d 23 (2014), cert. denied sub nom. *Anderson* v. *Semple*, U.S. , 135 S. Ct. 1453, 191 L. Ed. 2d 40 (2015). According to the respondent, *Padilla* requires only that counsel advise a client of a "heightened risk" of deportation, not that federal law mandates deportation. We disagree.

In *Padilla* v. *Kentucky*, supra, 559 U.S. 369, the United States Supreme Court concluded that the federal constitution's guarantee of effective assistance of counsel requires defense counsel to accurately advise a noncitizen client of the immigration consequences of a guilty plea. In reaching this conclusion, the Supreme Court acknowledged that the precise advice counsel must give depends on the clarity of the consequences specified by federal immigration law. Id. The precise consequences depend on a number of factors, including the crime committed, the client's criminal history and immigration status, and in some circumstances the exercise of discretion by federal authorities. Id., 368–69; see also id. 377–78 (Alito, J., concurring). Given these nuances in the law, the Supreme Court recognized that there may be occasions when the consequences of a guilty plea will be "unclear or uncertain" to competent defense counsel. Id., 369. In those circumstances, counsel "need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences." Id. But when the immigration consequences under federal law are clearly discernable, *Padilla* requires counsel to accurately advise his client of those consequences. Id. For some convictions, federal law calls for deportation, subject to limited exceptions. See id., 368–69. In these circumstances, because the likely immigration consequences of a guilty plea are "truly clear," counsel has a duty to inform his client of the deportation consequences set by federal law. Id., 369.

In the present case, the legal consequences faced by the petitioner were clear, and federal law mandated deportation. The petitioner was convicted of a drug trafficking offense, which is designated as an "aggravated felony" under federal immigration law. 8 U.S.C. § 1101 (43) (B) (2012). Federal law calls for deportation for aggravated felony convictions, subject to limited exceptions, which the parties agree do not apply in the petitioner's case. See 8 U.S.C. § 1227 (a) (2) (A) (iii) (2012). Because federal law called for deportation for the petitioner's conviction, his counsel was required to unequivocally convey to the petitioner that federal law mandated deportation as the consequence for pleading guilty. Warning of only a "heightened risk" of deportation, as the respondent suggests is sufficient, would not accurately characterize the law.[1]

In reaching this conclusion, however, we emphasize that there are no fixed words or phrases that counsel

must use to convey this information, and courts reviewing *Padilla* claims must look to the totality of counsel's advice, and the language counsel actually used, to ensure that counsel accurately conveyed the severity of the consequences under federal law to the client in terms the client could understand. In formulating its standard, *Padilla* did not prescribe any fixed words or phrases that counsel must use when advising the client of immigration consequences, but recognized that the content of counsel's advice will depend significantly on the client's circumstances. *Padilla* v. *Kentucky*, supra, 559 U.S. 368–69. Because each client's legal situation and ability to understand the English language and legal concepts will vary, courts applying *Padilla* have resisted identifying "magic words" that counsel must use or any "safe harbor" language that would presumptively satisfy counsel's obligations, similar to the warnings police officers must give under *Miranda* v. *Arizona*, 384 U.S. 436, 444, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). See, e.g., *State* v. *Shata*, 364 Wis. 2d 63, 98, 868 N.W.2d 93 (2015); see also *Commonwealth* v. *DeJesus*, 468 Mass. 174, 181 n.5, 9 N.E.3d 789 (2014) (declining to "dictate the precise language that must be employed [under *Padilla*], as each case will present different circumstances," including client's "ability to comprehend or understand English" and nuances of client's specific legal situation under state and federal law); *Chacon* v. *State*, 409 S.W.3d 529, 537 (Mo. App. 2013) ("*Padilla* does not require that counsel use specific words to communicate to a defendant the consequences of entering a guilty plea"). Instead, the focus of the court's inquiry must be on the essence of the information conveyed to the client to ensure that counsel clearly and accurately informed the client of the immigration consequences under federal law in terms the client could understand. See *Chacon* v. *State*, supra, 537; see also *Commonwealth* v. *DeJesus*, supra, 181 n.5. This requires the court to consider the totality of the advice given by counsel, make findings about what counsel actually told the client, and then determine whether, based on those findings, the petitioner met his burden to prove that counsel's advice failed to convey the information required under *Padilla*.

B

There is also evidence in the present case that the petitioner's counsel may have given advice casting doubt on the likelihood that federal authorities would actually apprehend and deport the petitioner despite the clarity of the law, and the parties disagree whether giving this type of advice violates *Padilla*. We therefore must also consider the impact of any advice about the likelihood of enforcement advice on counsel's duty under *Padilla*.

*Padilla* requires counsel to advise a client about the deportation consequences as set forth in federal law,

but it does not address whether criminal defense counsel must also advise a client about the actual likelihood that federal authorities will apprehend the client and carry out the consequences provided for by law. See, e.g., *State* v. *Shata*, supra, 364 Wis. 2d 99 ("[t]he *Padilla* [c]ourt did not require that criminal defense lawyers function as immigration lawyers or be able to predict what the executive branch's immigration policies might be now or in the future"). Indeed, predicting the exact likelihood of enforcement may prove difficult for a criminal defense attorney who has only limited experience, if any, with immigration authorities. Even when the immigration laws are clear as written, actual enforcement may vary. *Encarnacion* v. *State*, 295 Ga. 660, 663, 763 S.E.2d 463 (2014) ("[w]e recognize that, except for death and taxes, one hundred percent certainty does not exist in this world and one can always imagine exceptional circumstances in which, despite the clear mandate of 8 U.S.C. § 1227 (a), some noncitizens convicted of an aggravated felony might avoid removal"). Because of oversight or lax enforcement, some convicts undoubtedly manage to escape notice of the federal authorities. See id.; see also *Commonwealth* v. *Escobar*, 70 A.3d 838, 841 (Pa. Super. 2013). In addition, immigration enforcement policies and practices often differ between executive administrations. See, e.g., *State* v. *Shata*, supra, 95 n.16 ("[s]ince at least the 1960s, the federal executive branch has gone back and forth in adopting and rescinding policies regarding deferred action on deportation"). A period of either relaxed or strict enforcement may not last long, meaning that counsel's advice on current enforcement practices will have little meaning as policies change after the client accepts a plea deal.

Given the difficulty in predicting enforcement practices, counsel is not required to provide the client with predictions about whether or when federal authorities will apprehend the client and initiate deportation proceedings. Nevertheless, if counsel chooses to give advice or if the client inquires about federal enforcement practices, counsel must still impress upon the client that once federal authorities apprehend the client, deportation will be practically inevitable under federal law. See *Commonwealth* v. *DeJesus*, supra, 468 Mass. 181 (counsel must explain to client "that, if [f]ederal authorities apprehended the defendant, deportation would be practically inevitable").

In sum, our conclusions result in a two step inquiry for a court reviewing a claim that counsel's erroneous enforcement advice violated *Padilla*. First, the court must determine whether counsel complied with *Padilla* by explaining to the client the deportation consequences set forth in federal law. The advice must be accurate, and it must be given in terms the client could comprehend. If the petitioner proves that counsel did not meet these standards, then counsel's advice may

be deemed deficient under *Padilla*. If counsel gave the advice required under *Padilla*, but also expressed doubt about the likelihood of enforcement, the court must also look to the totality of the immigration advice given by counsel to determine whether counsel's enforcement advice effectively negated the import of counsel's advice required under *Padilla* about the meaning of federal law.

### III

In light of our clarifications concerning the proper standard, we conclude that we must reverse the habeas court's judgment and remand the case for a new trial. The habeas court made no findings of fact regarding what Klein actually told the petitioner about what federal law mandated or what Klein might have stated about the likelihood of enforcement. Furthermore, there was no separate consideration by the habeas court about whether counsel's advice regarding enforcement negated the import of counsel's advice about what federal law mandated regarding deportation.[2]

As a result, we are unable to review the habeas court's application of the standard, nor can we perform our own analysis on appeal. In some cases, we are able to resolve an appeal without reversal by applying the correct legal standard to the facts found by the habeas court. See *Anderson* v. *Commissioner of Correction*, supra, 313 Conn. 375 (noting that we exercise a plenary review over the application of law to facts found by the habeas court). In the present case, however, we cannot do so because the habeas court made virtually no findings about the content of the advice given by Klein. The court found only that Klein's advice did not contain the specific warning that a plea would "subject the petitioner to mandatory deportation," but did not otherwise make any findings about what Klein actually told the petitioner. And although the habeas court quoted portions of Klein's testimony in its memorandum of decision, it did not state whether it credited any of that testimony, and most of the court's quotations do not actually appear in the transcript of the hearing provided to this court.

In addition, we cannot perform our own review of the testimony to determine what Klein told the petitioner because the testimony is unclear on this point, and is disputed. Klein testified that he recalled certain conversations with the petitioner about immigration consequences, but he could not remember everything that he told the petitioner. Klein also testified about what he typically tells clients in a position similar to that of the petitioner, but without any indication of whether he gave that same advice to the petitioner. For his part, the petitioner testified that Klein did not tell him anything about immigration consequences. Klein's lapse of memory, his uncertainty about precisely what he told the petitioner, and the petitioner's contrary testi-

mony that Klein said nothing about immigration conse-
quence present issues of fact that we cannot resolve
on appeal. See *Gould* v. *Commissioner of Correction*,
301 Conn. 544, 566, 22 A.3d 1196 (2011). On remand,
therefore, the habeas court must make findings of fact
about what Klein actually told the petitioner and then
assess whether, based on those findings, the petitioner
has proven that Klein's advice violated the requirements
of *Padilla*, as clarified by our decision in the present
case.

The judgment is reversed and the case is remanded
for a new trial.

In this opinion the other justices concurred.

* This appeal was originally scheduled to be argued before a panel of
this court consisting of Chief Justice Rogers and Justices Palmer, Zarella,
Eveleigh, McDonald, Espinosa and Robinson. Although Justices Eveleigh
and Espinosa were not present when the case was argued before the court,
they have read the briefs and appendices, and listened to a recording of
oral argument prior to participating in this decision.

[1] Other courts applying *Padilla* in circumstances similar to the present
case have reached similar conclusions. See, e.g., *United States* v. *Al Halabi*,
633 Fed. Appx. 801, 802–803 (2d Cir. 2015); *United States* v. *Rodriguez-
Vega*, 797 F.3d 781, 786 (9th Cir. 2015); *Encarnacion* v. *State*, 295 Ga. 660,
663, 763 S.E.2d 463 (2014); *Commonwealth* v. *DeJesus*, 468 Mass. 174, 180–81,
9 N.E.3d 789 (2014); but see *State* v. *Shata*, 364 Wis. 2d 63, 101, 868 N.W.2d
93 (2015) (accepting as adequate counsel's warning of "strong chance"
of deportation).

[2] There are two other aspects of the habeas court's analysis that concern
us. Although we have determined that the habeas court's judgment must
be reversed, we address those aspects here because the matter will be
returned to the court for a new trial, and these issues may arise on remand.

First, it appears that when considering whether counsel advised the peti-
tioner of the consequences specified in federal law, the habeas court may
have been looking for evidence that counsel used a specific phrase, and did
not consider the possibility that counsel might have given the required
advice using simpler and more direct terms that the client could more easily
grasp. In its memorandum of decision, the habeas court quoted portions of
Klein's testimony, apparently looking for evidence that Klein had "specifi-
cally warned the petitioner that the plea would *subject him to mandatory
deportation*," and the court concluded that Klein's advice was deficient
because nothing in his testimony showed that he gave "the specific advice
from counsel required under *Padilla* that the plea would *subject the peti-
tioner to mandatory deportation* under [f]ederal law." (Emphasis added.)
Although warning a client that his plea makes him "subject to mandatory
deportation" may be sufficient to satisfy *Padilla*, it is not necessary that
counsel use this or even a similar phrase to convey the meaning of federal
law to the client. Indeed, for a client who speaks limited English, and has
little understanding about legal concepts, the phrase "subject to mandatory
deportation" may have little practical meaning, and a simpler phrasing of
the immigration consequences might better advise a client of the meaning
of federal law. *Commonwealth* v. *DeJesus*, supra, 468 Mass. 181 n.5. There
is evidence in the record that Klein may have told the petitioner that if
immigration authorities strictly enforced the law, it would result in deporta-
tion, but the habeas court did not discuss this advice in its decision. We
take no position on whether this advice was actually given or whether it
was sufficient, but we emphasize it to demonstrate that the habeas court
did not appear to consider whether this type of advice was sufficient under
the circumstances to adequately warn the petitioner of the deportation
consequences under federal law.

Second, we are concerned with the habeas court's apparent allocation of
the burden of proof. In its memorandum of decision, the habeas court
appeared to place the burden on Klein by reviewing his testimony for evi-
dence he had used a specific phrase when advising the petitioner, and then
concluding the petitioner was entitled to relief because, based on its review
of Klein's testimony, "there is nothing from which this court can reasonably
find that he ever gave the petitioner direct and unequivocal advice that a

[guilty] plea . . . would expose him to mandatory deportation under [f]ederal law." In addition, the habeas court appeared to fault Klein for being unable to remember all of the advice he gave the petitioner, implying at times that because Klein could not remember whether he gave certain advice, he must not have done so. Of course, it was not Klein's burden, nor the respondent's, to prove precisely what advice Klein had given and that the advice complied with *Padilla*. Rather, the habeas court must presume that counsel acted competently and the burden lies with the petitioner, as the party asserting ineffectiveness, to overcome this presumption and prove that Klein failed to give the required warning. *Johnson* v. *Commissioner of Correction*, 285 Conn. 556, 576–77, 941 A.2d 248 (2008).

---