******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# STATE OF CONNECTICUT *v.* MANUEL A. GUAMAN
## (AC 38248)

Alvord, Sheldon and Bear, Js.

*Argued January 10—officially released May 16, 2017*

(Appeal from Superior Court, judicial district of
Waterbury, Fasano, J.)

*Ismian Feraizi*, with whom, on the brief, was *Martin J. Minnella*, for the appellant (defendant).

*Nancy L. Chupak*, senior assistant state's attorney, with whom, on the brief, were *Maureen Platt*, state's attorney, and *Amy L. Sedensky*, senior assistant state's attorney, for the appellee (state).

*Opinion*

BEAR, J. The defendant, Manuel A. Guaman, appeals from the judgment of conviction of assault in the first degree in violation of General Statutes § 53a-59 (a) (3), rendered following the trial court's denial of his motion to withdraw his *Alford* plea.[1] On appeal, the defendant claims that the court erred when it denied his motion to withdraw his plea because his counsel at the time of his plea provided ineffective assistance when: (1) he failed to advise him of the immigration consequences of his guilty plea; and (2) he failed to advise him fully of his available options related to his plea because he was laboring under an undisclosed conflict of interest. We affirm the judgment of the trial court.

The following uncontested facts and procedural history are relevant to this appeal. On September 2, 2013, the defendant, a citizen of Ecuador, assaulted the victim with a broken beer bottle, causing severe lacerations to his right arm and face. The injuries required surgery and resulted in scarring to the victim's face. On September 3, 2013, the defendant was charged with assault in the first degree in violation of § 53a-59 and breach of peace in the second degree in violation of General Statutes § 53a-181.

While being represented by Attorney David Feliu, the defendant pleaded not guilty to the charges and elected a jury trial. After becoming dissatisfied with Feliu's representation, the defendant sought new counsel, and, thereafter, retained Attorney Ira Mayo. Mayo represented the defendant from May through September 2014. On October 1, 2014, Mayo began a four month suspension from the practice of law. Mayo first learned of this suspension on July 2, 2014.

On September 19, 2014, while still represented by Mayo, the defendant pleaded guilty, pursuant to the *Alford* doctrine, to assault in the first degree in violation of § 53a-59 (a) (3), under a substitute information. Following a canvass of the defendant, the court, *Fasano, J.*, determined that the defendant's plea was knowingly and voluntarily made with the assistance of competent counsel. During the canvass, the plaintiff affirmed to the court that he understood the immigration consequences of his plea, including that deportation was a "virtual certainty" after the court accepted his guilty plea and he was convicted of assault in the first degree. The defendant also affirmed that he had discussed the immigration consequences of his plea with his attorney. The court thereafter accepted the defendant's plea.

On March 27, 2015, the defendant, who by this date had again obtained new counsel, moved to withdraw his guilty plea on the grounds that Mayo had performed deficiently and thus provided him with ineffective assistance because he: (1) failed to advise him of the immigration consequences of his plea; and (2) failed to advise

him about all of his options regarding how to dispose of his case because of an actual conflict of interest. Given Mayo's forthcoming suspension, the defendant claimed that a conflict of interest arose in representing him at his plea hearing. The state objected to the motion, and the defendant and the state presented testimony and other evidence in support of their positions over the course of four days in June, 2015.

The defendant and David Avila, a friend who helped the defendant retain Mayo and translated for the defendant[2] at their first meeting, testified at the hearing on the motion to withdraw the guilty plea. Both men testified that Mayo had never discussed with the defendant the immigration consequences of pleading guilty. The defendant testified that the first time that Mayo told him of the plea offer was on September 19, 2014, that the conversation occurred just before the plea hearing was to take place, and that Mayo told him that he had to plead guilty. He also testified that there were never any discussions of his trial options, and that Mayo explained only the state's evidence against him. Additionally, he testified that Mayo never informed him of the four-month suspension from the practice of law to which Mayo had agreed and, instead, that Mayo told him that he was going on vacation for four months and that another attorney would handle the sentencing hearing scheduled for December, 2014.

In contradiction of the defendant's and Avila's testimony, Mayo testified at length regarding the advice he had given to the defendant over the course of his representation, stating that he had repeatedly advised the defendant that a conviction on the charged offenses would lead to deportation, that he, Mayo, would be suspended from the practice of law for four months, that he had reviewed with the defendant all of his options regarding whether to plead guilty or go to trial, and that he had given the defendant the names of at least two attorneys who would be willing to represent him if he chose to go to trial.

At the conclusion of the hearing, the court expressly credited Mayo's testimony over that of the defendant and Avila. Additionally, the court found that Mayo had advised the defendant of the immigration consequences of his plea, that the court had fully canvassed the defendant on his plea, and, that because of the potential length of the sentence that the defendant was exposed to if he were convicted, he chose to plead guilty notwithstanding the likelihood of deportation. The court also found that Mayo advised the defendant of his upcoming suspension, that Mayo gave him the names of other attorneys whom the defendant could contact to represent him, that the defendant was not forced to, or believed that he had to, plead guilty, and that any impact of the pending suspension was speculative. The court found, on the basis of the defendant's plea canvass,

that the defendant was satisfied with Mayo's representation at the time he pleaded guilty, and the court viewed the plea offer as "very fair" under the circumstances. Therefore, the court found that the defendant's plea was entered voluntarily and knowingly, and was made with the assistance of competent counsel. Accordingly, the court denied the defendant's motion.

Following its review of a presentence investigation report, the court sentenced the defendant to eight years of incarceration, execution suspended after three and one-half years, followed by three years of probation. This appeal followed.

Before addressing the merits of the defendant's claims on appeal, we set forth the standard of review for a denial of a motion to withdraw a guilty plea. "It is well established that [t]he burden is always on the defendant to show a plausible reason for the withdrawal of a plea of guilty. . . . To warrant consideration, the defendant must allege and provide facts which justify permitting him to withdraw his plea under [Practice Book § 39-27]. . . . Whether such proof is made is a question for the court in its sound discretion, and a denial of permission to withdraw is reversible only if that discretion has been abused. . . . In determining whether the trial court [has] abused its discretion, this court must make every reasonable presumption in favor of [the correctness of] its action. . . . Our review of a trial court's exercise of the legal discretion vested in it is limited to the questions of whether the trial court correctly applied the law and could reasonably have reached the conclusion that it did. . . .

"Motions to withdraw guilty pleas are governed by Practice Book §§ 39-26 and 39-27. Practice Book § 39-26 provides in relevant part: A defendant may withdraw his . . . plea of guilty . . . as a matter of right until the plea has been accepted. After acceptance, the judicial authority shall allow the defendant to withdraw his . . . plea upon proof of one of the grounds in [Practice Book §] 39-27 . . . . Practice Book § 39-27 (4) provides, in turn, that a defendant may withdraw his guilty plea after acceptance if [t]he plea resulted from the denial of effective assistance of counsel. . . . The standard for withdrawing a guilty plea is stringent because society has a strong interest in the finality of guilty pleas, and allowing withdrawal of pleas not only undermines confidence in the integrity of our judicial procedures, but also increases the volume of judicial work, and delays and impairs the orderly administration of justice."[3] (Citations omitted; emphasis omitted; internal quotation marks omitted.) *State* v. *Anthony D.*, 320 Conn. 842, 850–51, 134 A.3d 219 (2016).

To establish his claim of ineffective assistance, the defendant has the burden to show that "(1) counsel's representation fell below an objective standard of reasonableness, *and* (2) counsel's deficient performance

prejudiced the defense because there was a reasonable probability that the outcome of the proceedings would have been different had it not been for the deficient performance." (Emphasis in original.) *Johnson* v. *Commissioner of Correction*, 285 Conn. 556, 575, 941 A.2d 248 (2008). "The first prong requires a showing that counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the [s]ixth [a]mendment." (Internal quotation marks omitted.) Id., 576. With respect to the prejudice prong for claims of ineffective assistance when the conviction resulted from a guilty plea, the defendant must demonstrate that there is a reasonable probability that, but for counsel's errors, the defendant would not have pleaded guilty and would have insisted on going to trial. Id.

I

The defendant argues that the trial court abused its discretion when it denied his motion to withdraw his guilty plea because Mayo provided ineffective assistance when he failed to advise him of the immigration consequences of his guilty plea. We disagree.

The evidence offered at the motion to withdraw hearing reveals the following additional uncontroverted procedural history. During Attorney Feliu's representation, a plea offer was made in which the defendant could plead guilty to first degree assault in exchange for a sentence of ten years of incarceration, suspended after five years, followed by three years of probation, but the defendant could argue at sentencing for a period of incarceration between eighteen months and five years. Feliu discussed the immigration consequences of the pending charges with the defendant and advised him to consult an immigration attorney, providing him with the name of an attorney he could contact. The defendant became dissatisfied with Feliu's representation and sought new counsel with the help of Avila.

Mayo, whose testimony was expressly credited by the court, testified as follows. In April, 2014, Avila contacted him to represent the defendant. Before meeting with the defendant, Mayo spoke with Feliu, and they discussed the plea offer, the evidence, the potential immigration issues posed by the defendant's lack of citizenship status, and that there was a letter from a potential eyewitness who could testify on the defendant's behalf.

On May 13, 2014, Mayo met the defendant, the defendant's brother, and Avila at a coffee shop inside a bookstore in Waterbury. At the meeting, Avila and the defendant's brother translated for the defendant, as they discussed the case, the available plea offer, and immigration issues. Specifically, they discussed a self-defense theory and the defendant's version of the events. Mayo asked the defendant if he had contacted the immigration attorney that Feliu had recommended,

but the defendant indicated that he had not. He explained that the defendant would be deported if he were convicted of the current charges. Although the defendant was receiving the information through a translator, he seemed to understand what Mayo was explaining. During the meeting, the defendant asked Mayo questions, including asking repeatedly whether there was a way to avoid deportation because he had a family in the United States. The defendant chose to retain Mayo at that meeting, signing a retainer agreement and "pa[ying] in full."

Following a pretrial conference on July 7, 2014, Mayo and the defendant remained at the courthouse to discuss, with the aid of an interpreter, the state's plea offer and the attendant immigration consequences of accepting that plea offer, i.e., deportation. As part of their plea offer discussions, Mayo and the defendant discussed whether to accept the offer or proceed to trial. During this discussion, they reviewed the state's evidence: the photographs of the victim's injuries, the medical records, and the police report that included an admission by the defendant and his stated motives for assaulting the victim.

Prior to a scheduled September 4, 2014 court date, at which the defendant would be required to accept or reject the plea offer, Mayo and the defendant spoke over the telephone with the aid of Mayo's Spanish-speaking legal assistant. They discussed whether the defendant should accept or decline the plea offer. During this telephone call, Mayo explained the defendant's options either if the case went to trial or if the defendant chose to accept the plea offer.

On September 4, 2014, the defendant was still unsure about whether he wanted to accept or reject the offer, so the state's attorney and the court agreed to give him until September 19, 2014, to decide. That day, Mayo explained to the defendant that he would have to decide whether to accept or reject the offer because, if he did not accept the offer on September 19, the judge would place the case on the trial list and the plea offer would be withdrawn. At some point, after learning that the defendant still had not spoken with an immigration attorney, Mayo advised the defendant that he needed to contact an immigration attorney about his situation, either an attorney that he recommended or the attorney that Feliu had recommended.

Also at the September 4, 2014 court appearance, Mayo told the defendant that he was going to be suspended from the practice of law for a period of four months. He stated that the defendant could choose to retain another attorney before or after the September 19, 2014 plea hearing. Additionally, if the defendant chose to reject the offer and go to trial, he could assist another attorney to prepare for trial or he could conduct the trial himself if the trial was scheduled after his suspension

concluded. The defendant did not seem concerned by this development and chose to continue with Mayo representing him for the September 19 hearing.

On September 19, 2014, in a courthouse hallway, he and the defendant discussed the defendant's options at length with the aid of an interpreter. The defendant decided to accept the plea offer, and Mayo explained to him what the court expected in a plea canvass, including the questions judges usually ask. Additionally, they went over what it meant to plead guilty under the *Alford* doctrine and the immigration issues that the judge would address during the canvass. They again discussed the immigration consequences of the defendant's plea. The defendant was aware that if he pleaded guilty, he would be deported. Finally, Mayo also informed the defendant that he would not be able to represent him at sentencing, which was scheduled for December 5, 2014, due to his suspension from the practice of law. Furthermore, he provided the defendant with the names of two attorneys who could represent him at sentencing.

As explained in *Padilla* v. *Kentucky*, 559 U.S. 356, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010), and *Budziszewski* v. *Commissioner of Correction*, 322 Conn. 504, 142 A.3d 243 (2016),[4] an attorney has an affirmative obligation to advise a client of the immigration and deportation consequences of his or her guilty plea.[5] "In *Padilla* . . . the United States Supreme Court concluded that the federal constitution's guarantee of effective assistance of counsel requires criminal defense counsel to accurately advise a noncitizen client of the immigration consequences of pleading guilty to a crime, as described in federal law. . . . For crimes designated as aggravated felonies, including the crime at issue in the present case, federal law mandates deportation almost without exception. . . . We conclude that, for these types of crimes, *Padilla* requires counsel to inform the client about the deportation consequences prescribed by federal law." (Citations omitted.) *Budziszewski* v. *Commissioner of Correction*, supra, 322 Conn. 506–507.

Our Supreme Court emphasized that "there are no fixed words or phrases that counsel must use to convey this information, and courts reviewing *Padilla* claims must look to the totality of counsel's advice, and the language counsel actually used, to ensure that counsel accurately conveyed the severity of the consequences under federal law to the client in terms the client could understand. In formulating its standard, *Padilla* did not prescribe any fixed words or phrases that counsel must use when advising the client of immigration consequences, but recognized that the content of counsel's advice will depend significantly on the client's circumstances. . . . Because each client's legal situation and ability to understand the English language and legal concepts will vary, courts applying *Padilla* have

resisted identifying magic words that counsel must use or any safe harbor language that would presumptively satisfy counsel's obligations, similar to the warnings police officers must give under *Miranda* v. *Arizona*, 384 U.S. 436, 444, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). . . . Instead, the focus of the court's inquiry must be on the essence of the information conveyed to the client to ensure that counsel clearly and accurately informed the client of the immigration consequences under federal law in terms the client could understand. . . . This requires the court to consider the totality of the advice given by counsel, make findings about what counsel actually told the client, and then determine whether, based on those findings, the petitioner met his burden to prove that counsel's advice failed to convey the information required under *Padilla*." (Citations omitted; internal quotation marks omitted.) Id., 512–14.

On appeal, the defendant claims that Mayo provided ineffective assistance because he failed to advise him of the immigration consequences of his guilty plea.[6] After weighing the testimony of the defendant, Avila, and Mayo, the court expressly credited Mayo's testimony and found that Mayo had advised the defendant of the immigration consequences of his plea, and that the defendant nevertheless chose to plead guilty, notwithstanding the likelihood of deportation. Specifically, the court found that "[Mayo] testified he told the defendant [first degree assault] was a deportable offense. And I certainly believe it under the circumstances. [C]onsequently, I disbelieve the position of the testimony of the defendant with respect to this issue." Consequently, the court found that Mayo had advised the defendant of the immigration consequences of his plea. See *Budziszewski* v. *Commissioner of Correction*, supra, 322 Conn. 513–14.

The record supports this determination because Mayo testified that he advised the defendant on multiple occasions that a conviction of first-degree assault would result in deportation. Mayo testified that the defendant was aware of the deportation consequences of his conviction of assault in the first degree in violation of § 53a-59 (a) (3), and that he discussed his concerns about deportation with Mayo during their first meeting. The defendant's and Avila's testimony to the contrary required the court to make a credibility determination to which we accord deference when it is supported by the record, as it is in this case. See *State* v. *Brown*, 82 Conn. App. 678, 682, 846 A.2d 943 (in affirming denial of motion to withdraw plea, deferring to trial court's finding that testimony of defendant's former attorney was more credible than defendant's), cert. denied, 270 Conn. 906, 853 A.2d 522 (2004).

Accordingly, in light of the testimony and other evidence, as well as the trial court's credibility determination, we conclude that Mayo's performance was not

deficient or ineffective due to any failure to advise the defendant of the immigration consequences of deportation after his conviction of assault in the first degree in violation of § 53a-59 (a) (3); therefore, the court did not abuse its discretion in denying the motion to withdraw the defendant's guilty plea on this ground.

## II

The defendant also argues that he received ineffective assistance of counsel because Mayo did not fully explain his options to him due to a purported conflict of interest. "[I]t is well established that [a] criminal defendant is constitutionally entitled to adequate and effective assistance of counsel at all critical stages of criminal proceedings. . . .   This right arises under the sixth and fourteenth amendments to the United States constitution and article first, § 8, of the Connecticut constitution. . . . It is axiomatic that the right to counsel is the right to the effective assistance of counsel. . . . As an adjunct to this right, a criminal defendant is entitled to be represented by an attorney free from conflicts of interest." (Citations omitted; internal quotation marks omitted.) *Rodriguez* v. *Commissioner of Correction*, 312 Conn. 345, 352, 92 A.3d 944 (2014).

Although *Strickland* v. *Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), and *Hill* v. *Lockhart*, 474 U.S. 52, 59, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985), require a defendant to establish prejudice, "[w]here . . . the defendant claims that his counsel was burdened by an actual conflict of interest . . . the defendant need not establish actual prejudice. . . . Where there is an actual conflict of interest, prejudice is presumed because counsel [has] breach[ed] the duty of loyalty, perhaps the most basic of counsel's duties. Moreover, it is difficult to measure the precise effect on the defense of representation corrupted by conflicting interests." (Internal quotation marks omitted.) *Adorno* v. *Commissioner of Correction*, 66 Conn. App. 179, 194, 783 A.2d 1202, cert. denied, 258 Conn. 943, 786 A.2d 428 (2001). "In a case of a claimed conflict of interest . . . in order to establish a violation of the sixth amendment the defendant has a two-pronged task. He must establish (1) that counsel actively represented conflicting interests and (2) that an actual conflict of interest adversely affected his lawyer's performance." (Internal quotation marks omitted.) *Phillips* v. *Warden*, 220 Conn. 112, 133, 595 A.2d 1356 (1991).

In the present case, the parties largely focus their arguments on whether Mayo in fact represented conflicting interests. The court's decision, however, does not contain any specific finding as to whether a conflict existed. Nevertheless, the court found that any impact from Mayo's upcoming suspension was "totally speculative." In contesting this finding on appeal, the defendant relies mostly on testimony explicitly discredited by the court, and on what the court rejected as speculation.

After reviewing the record, briefs, and parties' arguments before this court, we determine that the court properly concluded, based on the evidence before it, that any limitation on Mayo's advice to the defendant related to a purported conflict arising from his impending suspension was speculative. Accordingly, the court properly concluded that the defendant did not establish that Mayo's performance was adversely affected by his forthcoming suspension. *State* v. *Webb*, 238 Conn. 389, 423, 680 A.2d 147 (1996). The court therefore did not abuse its discretion in denying the defendant's motion to withdraw his plea on this ground.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] "Under *North Carolina* v. *Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970), a criminal defendant is not required to admit his guilt . . . but consents to being punished as if he were guilty to avoid the risk of proceeding to trial. . . . A guilty plea under the *Alford* doctrine is a judicial oxymoron in that the defendant does not admit guilt but acknowledges that the state's evidence against him is so strong that he is prepared to accept the entry of a guilty plea nevertheless." (Internal quotation marks omitted.) *State* v. *Pentland*, 296 Conn. 305, 308 n.3, 994 A.2d 147 (2010).

[2] The defendant's native language is Kichwa, but he also speaks Spanish.

[3] Contrary to the defendant's assertion in his brief that our standard of review of his claims is plenary, we review them for an abuse of discretion. *State* v. *Anthony D.*, 320 Conn. 842, 850–51, 134 A.3d 219 (2016).

[4] After the defendant submitted his brief but before the state submitted its brief and the defendant his reply, the Supreme Court decided *Budziszewski* v. *Commissioner of Correction*, supra, 322 Conn. 504; neither party, however, discussed the case, in its brief. This court, therefore, ordered the parties to be prepared to discuss the applicability of *Budziszewski* at oral argument, and the parties did so.

[5] For a more complete discussion of *Padilla* and *Budziszewski*, see *Duncan* v. *Commissioner of Correction*, 171 Conn. App. 635,    A.3d    (2017).

[6] It is undisputed that federal law required that the defendant be deported after his conviction of assault in the first degree in violation of § 53a-59 (a) (3), because it is an aggravated felony under 8 U.S.C. § 1101 (a) (43) (F) (2012).