MANSFIELD, Justice
(concurring specially).
I concur in the result and in most of the court’s opinion. I agree that the defendant’s trial counsel provided ineffective assistance by failing to advise his client that he would be deported based on his guilty plea. This was a “truly clear” consequence, and counsel had a duty to tell his client about it. See Padilla v. Kentucky, 559 U.S. 356, 369, 130 S.Ct. 1473, 1483, 176 L.Ed.2d 284 (2010). Additionally, Roberto Morales Diaz suffered prejudice because, as the district court found, he would not have pled guilty had he been properly advised on this point. Therefore, I agree the district court’s judgment should be affirmed.
However, the court today goes a step further. It imposes a duty on counsel to explain to the client “the full meaning and consequences of deportation.” (Emphasis added.) The parties have not briefed or argued this issue. Both here and in the district court, the alleged breach of duty involved trial counsel’s incorrect advice that Morales Diaz might be deported if he pled guilty, when in fact it was certain Morales Diaz would be deported. The majority confuses this straightforward argument on breach of duty with the more elaborate argument Morales Diaz made to establish prejudice—i.e., to show that he would have gone to trial if he had been told the guilty plea would result in automatic deportation. Thus, contrary to what *735 the court says, eligibility for “cancellation of removal” was raised not as something that criminal defense counsel has a duty to explain to the client, but as an explanation for why a rational criminal defendant would have taken his chances at trial. Hence, this case does not present the alleged duty of counsel to “advise of the specific consequences beyond deportation.” We do not need to decide whether such a duty exists to resolve the present case. I would not decide the issue today sua sponte.
“Immigration law can be complex, and it is a legal specialty of its own.” Padilla, 559 U.S. at 369, 130 S.Ct. at 1483. As I read Padilla, it focuses on whether or not the client will be deported as a result of the plea, not on the panoply of effects that may or may not flow from deportation. The Court repeatedly stressed the “unique nature of deportation,” id. at 365, 130 S.Ct. at 1481, noting it had “long recognized that deportation is a particularly severe ‘penalty,’ ” id. (quoting Fong Yue Ting v. United States, 149 U.S. 698, 740, 13 S.Ct. 1016, 1032, 37 L.Ed. 905 (1893) (Brewer, J., dissenting)); see id. at 368, 130 S.Ct. at 1483 (“[Preserving the client’s right to remain in the United States may be more important to the client than any potential jail sentence.” (quoting INS v. St. Cyr, 533 U.S. 289, 322, 121 S.Ct. 2271, 2291, 150 L.Ed.2d 347 (2001)); see also Chaidez v. United States, 568 U.S. 342, 355, 133 S.Ct. 1103, 1112, 185 L.Ed.2d 149 (2013) (noting that in Padilla, “we relied on the special ‘nature of deportation,’ ” including “the severity of the penalty” (quoting Padilla, 559 U.S. at 365, 130 S.Ct. at 1481)). Hence, the crux of the decision turned on deportation itself, not on potential ramifications stemming from deportation.
Several appellate courts have declined to expand Padilla’s scope beyond advice on deportation. The Tennessee Supreme Court confronted this exact issue in Garcia v. State, 425 S.W.3d 248 (Tenn. 2013). In that case, the petitioner had earlier pled guilty to several criminal charges. Id. at 253. Following his conviction, the petitioner filed for postconviction relief, arguing that trial counsel was ineffective by failing to explain whether his guilty plea would either “result in his deportation” or “bar his future legal admission into the United States.” Id. at 257. In other words, the petitioner argued that under Padilla, trial counsel “should have done more than advise that the plea could have future immigration consequences.” Id. The state responded that trial counsel clearly informed the petitioner that he would be deported, but disputed that counsel’s duty extended to questions of future admissibility into the country, as that issue was “merely a collateral (and speculative) consequence of a guilty plea.” Id. at 257-58.
Relying on Padilla, the court rejected the petitioner’s claims. The court first noted there was clear evidence that the petitioner knew he would be subject to deportation upon pleading guilty. Id. at 259. But further, the court agreed with the state regarding counsel’s duty to advise on future immigration consequences:
With respect to the consequences of a guilty plea for future attempts to legally immigrate to the United States, as the State points out, Padilla involved only defense counsel’s obligation to advise of the deportation consequences of a guilty plea. Padilla does not address counsel’s obligation to advise a client regarding the effect a guilty plea will have upon the client’s future eligibility to immigrate legally to the United States. Extending Padilla as the petitioner suggests would impose a substantial burden upon defense counsel. Legal immigration depends upon many factors, which may change as a result of Congressional ac *736 tion, executive agency policy choices, or court decisions. Padilla neither mandates, nor even suggests, that defense counsel in a state criminal trial must be able to advise her client of the effect a guilty plea is likely to have upon the client’s future eligibility to immigrate legally to the United States.
Id. at 260.
The Florida District Court of Appeal has rejected a similar claim that Padilla mandates advice regarding whether a guilty plea may have “a negative impact on the possibility of avoiding removal or being able to reenter.” Rosario v. State, 165 So.3d 672, 673 (Fla. Dist. Ct. App. 2015) (per curiam). The court reasoned,
Beyond advising of the risk of deportation as required by Padilla, counsel had no affirmative duty to provide advice about other possible immigration ramifications of the plea, such as whether the plea might negatively impact her ability to obtain an adjustment in status, a waiver of inadmissibility, or cancellation of removal. Padilla did not create a duty for criminal defense counsel to provide all manner of advice about possible immigration consequences flowing from a plea.
Id. at 673. The court also added that “[t]he possibility for an adjustment in status, a matter within the exclusive discretion of federal officials, is too speculative.” Id.) see also Yanez v. State, 170 So.3d 9, 11-12 (Fla. Dist. Ct. App. 2015) (holding that Padilla does not expand counsel’s duty to advise on potential status adjustment).
The Tennessee and Florida courts are not alone. Other courts have adhered to the same distinction between advice on deportation per se and broader immigration advice. See United States v. Chan, 792 F.3d 1151, 1154 (9th Cir. 2015) (noting that Padilla was narrow in that it “concerned only deportation,” not “all ‘immigration consequences’ ” (quoting United States v. Kwan, 407 F.3d 1005, 1015 (9th Cir. 2005)); see also United States v. Suero, No. 09-cr-41-JL, 2014 WL 6896011, at *4 & n.2 (D.N.H. Dec. 5, 2014) (declining to extend Padilla to advising a client on “any effect on his right to foreign travel”); United States v. Chezan, No. 10 CR 905-1, 2014 WL 8382792, at *24-25 (N.D. Ill. Oct. 14, 2014) (concluding that Padilla does not extend to the context of mandatory detention); United States v. Dolmuz-Carcamo, Cr. Ca. No. C-11-169, Ca. No. C-12-333, 2013 WL 3324207, at *3 n.3 (S.D. Tex. July 1, 2013) (noting that “Padilla does not require ... more involved questions of immigration law to be handled by criminal defense lawyers,” such as permanent-residency status and political asylum); Garcia v. United States, No. CR 97-022 MEJ, 2012 WL 5389908, at *5 (N.D. Cal. Nov. 5, 2012) (noting that Padilla applies “only when those [specific] consequences are deportation or removal, as opposed to any immigration consequences”); United States v. Randazzo, No. 11-2411, No. 06-288, 2011 WL 1743395, at *6 n.7 (E.D. Pa. May 6, 2011) (“[W]e reject Randazzo’s suggestion that Padilla should be read more broadly to create a general right to complete and accurate counseling at sentencing regarding the precise immigration consequences of a conviction and sentence.”); cf. People v. Arendtsz, 247 Cal.App.4th 613, 202 Cal.Rptr.3d 232, 237 (2016) (“[Tjhere is nothing in Padilla ... that compels a trial court to specifically advise on asylum or cancellation of removal”).
The majority cites only one decision, State v. Favela, 343 P.3d 178 (N.M. 2015), to try to demonstrate that the duty recognized in Padilla includes an explanation of “the specific consequences beyond deportation.” In that case, the New Mexico Supreme Court did note in passing that trial counsel may be held ineffective for failing *737 to advise a client of “the ‘specific immigration consequences of pleading guilty.’ ” Id. at 182 (quoting State v. Paredez, 136 N.M. 533, 101 P.3d 799, 805 (2004)). However, Favela is easily distinguishable. The main focus in that case was the prejudice prong of Strickland—i.e., how a judicial admonition during plea proceedings or the weight of the evidence in the case could affect any prejudice analysis. Id. at 179. But more to the point, Favela contains no discussion of Padilla and instead relies only on its own pre-Padilla precedent, State v. Paredez, 101 P.3d at 804-05. It’s worth noting that the Maryland Court of Appeals recently distinguished Favela on similar grounds, because “in general, the New Mexico standard [is] a higher standard than that in Padilla.” State v. Sanmartín Prado, 448 Md. 664, 141 A.3d 99, 129-130 (2016).
My initial reaction is that the approach taken in cases like Garcia makes more sense. “ [Predicting the exact likelihood of enforcement may prove difficult for a criminal defense attorney who has only limited experience, if any, with immigration authorities.” Budziszewski v. Comm’r of Corr., 322 Conn. 504, 142 A.3d 243, 250 (2016). Unlike Padilla itself, today’s standard cannot be met by basic legal research, but instead imposes a duty on criminal defense counsel to get up to speed on immigration law generally.
I seriously question whether the State Public Defender’s Office has the resources to meet the new duty fashioned by today’s decision. Appointed counsel will have to advise noncitizen defendants not only on the likelihood of deportation, but also on other legal consequences that may result from the deportation, potentially months or years later. I fear there will need to be a phalanx of immigration lawyers on call.
And today’s decision could tax our own judicial system as well. For example, will we see a slew of postconviction relief proceedings filed by defendants who received Padilla-compliant advice on deportation but were not told about one or more other immigration consequences?
For all these reasons, I concur in the result and much of the court’s analysis but cannot join Part III.A of the court’s opinion.
Waterman and Zager, JJ., join this special concurrence,