******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************************

# SERGIO ECHEVERRIA *v.* COMMISSIONER OF CORRECTION
## (AC 40903)

Lavine, Keller and Harper, Js.

*Syllabus*

The petitioner, a citizen of Bolivia, sought a writ of habeas corpus, claiming that his trial counsel had provided ineffective assistance by failing to advise him adequately as to the immigration consequences of his plea of guilty to certain offenses that subjected him to deportation. The petitioner initially was charged with offenses that exposed him to twelve years of imprisonment. After the petitioner received a plea offer from the state, the trial court indicated that it would allow the petitioner to enter an open guilty plea with no agreed upon sentence to two charges and offered to vacate the plea and grant the petitioner's application for accelerated rehabilitation if the petitioner paid a $10,000 fine. The petitioner then entered a guilty plea. It was subsequently determined that the petitioner was ineligible for accelerated rehabilitation, and the state and the petitioner agreed on a sentence of five years of imprisonment, execution suspended, with three years of probation. The petitioner did not ask to withdraw his guilty plea. After the petitioner was sentenced, deportation proceedings against him were initiated. At the habeas trial, the petitioner testified that, at the time he entered his plea, he understood that if it was determined that he was ineligible for accelerated rehabilitation, he could be deported. He also testified that he did not think he would be deported after he accepted a plea agreement that did not require him to serve any time in prison. The habeas court rendered judgment denying the habeas petition and granted the petition for certification to appeal, and the petitioner appealed to this court. *Held* that the habeas court properly rejected the petitioner's ineffective assistance of counsel claim and denied the habeas petition, that court having properly determined that the petitioner failed to demonstrate that he was prejudiced by his trial counsel's allegedly deficient performance: the habeas court credited the testimony of the petitioner's trial counsel that avoiding double digit incarceration was the petitioner's primary concern, that, on several occasions, he discussed with the petitioner the immigration issues associated with the case and that it was his understanding that the petitioner knew of the immigration consequences, the petitioner stated on the record during the plea canvass that he understood that his guilty plea may lead to his deportation and his claim that he would have proceeded to trial had he known of the immigration consequences of his guilty plea was belied by the testimony adduced at the habeas trial; accordingly, the habeas court's conclusion was legally and logically correct, and the petitioner failed to demonstrate a reasonable probability that he would not have pleaded guilty had he known that it would lead to certain deportation and that he, instead, would have proceeded to trial.

Argued May 13—officially released September 24, 2019

*Procedural History*

Petition for a writ of habeas corpus, brought to the Superior Court in the judicial district of Tolland and tried to the court, *Oliver, J.*; judgment denying the petition, from which the petitioner, on the granting of certification, appealed to this court. *Affirmed.*

*Vishal K. Garg*, for the appellant (petitioner).

*Denise B. Smoker*, senior assistant state's attorney, with whom, on the brief, were *Richard J. Colangelo, Jr.*, state's attorney, and *Jo Anne Sulik*, supervisory state's attorney, for the appellee (respondent).

*Opinion*

HARPER, J. The petitioner, Sergio Echeverria, appeals from the judgment of the habeas court denying his petition for a writ of habeas corpus. The petitioner's sole claim on appeal is that the habeas court improperly rejected his claim that he had received ineffective assistance of counsel due to his attorney's failure to advise him properly of the immigration consequences of his guilty plea pursuant to *Padilla* v. *Kentucky*, 559 U.S. 356, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010). We disagree and, accordingly, affirm the judgment of the habeas court.

The following facts and procedural history are relevant to this appeal. The petitioner is a Bolivian citizen who entered the United States without authorization at the age of six. On February 7, 2014, police officers executed a search warrant on the petitioner's Stamford apartment. Pursuant to the executed warrant, the police officers found and subsequently seized 4.3 pounds of marijuana, a large sum of cash, and a semiautomatic pistol with the serial number removed. A police report admitted into evidence at the habeas trial also revealed that the police seized, inter alia, a marijuana grinder, a digital scale, and several plastic bags containing the drug commonly referred to as "Molly." The petitioner subsequently was arrested and charged with two counts of possession of a hallucinogenic substance other than marijuana or more than four ounces of marijuana in violation of General Statutes § 21a-279 (b); possession of marijuana with intent to sell in violation of General Statutes § 21a-277 (b); operation of a drug factory in violation of General Statutes § 21a-277 (c); possession of narcotics with intent to sell by a person who is not drug-dependent in violation of General Statutes § 21a-278 (b); and illegal alteration of a firearm identification mark in violation of General Statutes § 29-36.[1] Thereafter, the petitioner retained Attorney Michael Skiber to represent him.

Following the petitioner's arrest, the state and Skiber, on behalf of the petitioner, entered into pretrial negotiations. The state initially offered a plea deal by which the petitioner would plead guilty to a charge stemming from the sale of marijuana,[2] as well as alteration of a firearm identification mark, and the state would recommend a sentence of five years of incarceration, execution suspended after three years, followed by three months of probation.[3] The petitioner did not accept the offer, and the case was placed on the jury list.

On June 3, 2015, after the petitioner received another plea offer from the state, the trial court indicated that it would allow the petitioner to enter an open guilty plea with no agreed upon sentence to possession of marijuana with intent to sell in violation of § 21a-277 (b) and alteration of a firearm identification mark in

violation of § 29-36. If, however, the petitioner paid a $10,000 fine, the trial court offered to vacate the plea and grant the petitioner's application for accelerated rehabilitation. The petitioner subsequently entered a guilty plea. The trial court accepted the petitioner's plea, finding that it was made knowingly, intelligently, and voluntarily. After the trial court accepted his plea, the petitioner stated that he was unsure of whether he previously had been convicted of a crime, calling into question his ability to receive accelerated rehabilitation.[4] In light of the petitioner's statement, Skiber asked the trial court to let the petitioner withdraw his plea. The trial court declined Skiber's request, opting instead to determine whether the petitioner was in fact eligible for accelerated rehabilitation before allowing the petitioner to withdraw his plea.

After it was determined that the petitioner was ineligible for accelerated rehabilitation, the state and the petitioner agreed on a sentence of five years of incarceration, execution suspended, with three years of probation. The petitioner did not ask for his plea to be withdrawn. On September 3, 2015, the trial court found the petitioner guilty and sentenced the petitioner in accordance with the agreed upon disposition.

After the petitioner was sentenced, the United States Department of Homeland Security (department) initiated proceedings to deport the petitioner. In its petition to remove the petitioner from the country, the department cited as grounds for removal (1) the petitioner's criminal conviction, (2) the petitioner's unlawful entry into the United States, and (3) that the petitioner did not possess any valid documentation to lawfully remain in the country. On February 18, 2016, the United States Immigration Court adjudicated the petitioner to be removable from the United States. On May 6, 2016, the petitioner filed the underlying petition for a writ of habeas corpus alleging, inter alia, that his trial counsel had provided ineffective assistance by failing to inform him of the immigration consequences of his guilty plea.

A trial on the petition for a writ of habeas corpus was conducted on April 17, 2017. The petitioner presented testimony from himself, Skiber, and an expert witness, Attorney Kevin Smith, a criminal defense attorney who had experience in representing defendants who faced immigration consequences stemming from criminal charges. The respondent did not present any evidence.

The petitioner testified that he had hired Skiber to represent him after posting bail. The petitioner testified that during their initial meeting, he informed Skiber that he was not a citizen of the United States. Further, the petitioner testified that when the state initially offered a plea deal which, according to the petitioner, included two years of incarceration, he did not accept the offer because he knew that it would lead to him being deported. The petitioner testified that he spoke

with an immigration attorney upon receiving the plea offer that included two years of jail time, but he was unable to identify with whom he spoke. According to the petitioner, the immigration attorney advised him to seek a plea deal with no jail time because any conviction that entailed more than a year in jail was likely to render him deportable.

The petitioner also testified that when he pleaded guilty to possession of marijuana with intent to sell and alteration of a firearm identification mark, he was unsure of what the immigration consequences were, but he understood that if it was determined that he was ineligible for accelerated rehabilitation, he was going to be deported. Later, the petitioner testified that, after he was deemed ineligible for accelerated rehabilitation, he did not think that he was going to be deported when he accepted the plea agreement providing for a sentence of five years of incarceration, execution suspended, with three years of probation because the agreement did not require him to serve any jail time. The petitioner testified that when he received the plea offer for three years' probation with no jail time, he told Skiber that he wanted to consult an immigration lawyer, and that Skiber represented to him that the deal was "as good as it would get" because, if he rejected the offer, he would have to proceed to trial, which would be risky considering that it would be the petitioner's word against that of the police officers. Further, the petitioner testified that he would not have accepted the plea offer if he knew that he was going to be deported and that he instead would have proceeded to trial.

Skiber testified that he had notified the petitioner early on in the case that a conviction for the offenses he faced would lead to his deportation. When the petitioner received the plea offer that included two years of jail time, Skiber testified that he recommended to the petitioner that he not take the offer because the petitioner "had some leverage" with a suppression issue and the offer entailed jail time and certain deportation.[5] Skiber later reiterated in his testimony that he had told the petitioner early on in the case that "a felony of this magnitude was a definite deportation." Despite testifying that the petitioner's criminal case had a "great" suppression issue, he also testified that he did not file a motion to suppress because, in his opinion, motions to suppress were rarely granted in the Stamford criminal court, and, if the petitioner did not succeed on such a motion, he would have lost all leverage to negotiate a more favorable plea deal.

As to the plea offer made on June 3, 2015, pursuant to which which the petitioner was to enter an open guilty plea that would be vacated if he paid a $10,000 fine and was deemed eligible for accelerated rehabilitation, Skiber testified that he was unsure as to whether he notified the petitioner on that date that accepting the

plea offer may impact his immigration status, but he once again reiterated that he did tell the petitioner early on in the criminal case that "a conviction of this sort would be a deportable offense, guaranteed." Later in his testimony, Skiber testified that before the petitioner pleaded guilty he went through the plea canvass with him, which included a question regarding the petitioner's understanding that the plea could result in his deportation. On the basis of several discussions with the petitioner, Skiber testified that the petitioner knew that he would be deported if he pleaded guilty.

When it was determined that the petitioner was ineligible for accelerated rehabilitation, Skiber testified that he negotiated a sentence that entailed a no jail resolution on the petitioner's behalf. Skiber testified that he again went over the plea canvass with the petitioner and that he "can't say . . . hundred percent sure that [he] told [the petitioner] it was going to—it was deportable . . . ." Further, Skiber again testified that it was his impression that the petitioner understood, from earlier conversations between the two of them, that he would be deported if he was ineligible for accelerated rehabilitation.

On July 26, 2017, the habeas court denied the petitioner's petition for a writ of habeas corpus. In its memorandum of decision, the court first credited the testimony of Skiber in determining that his performance was not constitutionally deficient. Specifically, the court found that Skiber had informed the petitioner that a conviction for possession of marijuana with intent to sell would lead to certain deportation, and that "counsel was clear and unambiguous throughout the criminal litigation as to the certainty of deportation." Moreover, the court determined that any erroneous advice given to the petitioner was provided by the immigration attorney that the petitioner was unable to identify.

The court also determined that the petitioner was not prejudiced by Skiber's allegedly deficient performance because the petitioner failed to establish that avoiding deportation was the determinative issue in his case. In its memorandum of decision, the court noted that the petitioner was not asked if he would have accepted a plea deal that included a period of incarceration in exchange for pleading guilty to charges that were less likely to result in his deportation. The court also observed that the petitioner did not present any evidence to demonstrate that he would have been offered the opportunity to participate in another pretrial diversionary program. Finally, the court opined that, in the department's petition to remove the petitioner from the United States, it cited two grounds justifying the removal of the petitioner that were irrelevant to his criminal conviction. The court subsequently granted the petitioner's petition for certification to appeal, and the petitioner timely filed the present appeal. Additional

facts will be set forth as necessary.

We begin our analysis by setting forth the relevant standard of review and legal principles that inform our analysis. "A criminal defendant is constitutionally entitled to adequate and effective assistance of counsel at all critical stages of criminal proceedings. . . . This right arises under the sixth and fourteenth amendments to the United States constitution and article first, § 8, of the Connecticut constitution. . . . It is axiomatic that the right to counsel is the right to the effective assistance of counsel. . . .

"A claim of ineffective assistance of counsel is governed by the two-pronged test set forth in *Strickland* v. *Washington*, [466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)]. Under *Strickland,* the petitioner has the burden of demonstrating that (1) counsel's representation fell below an objective standard of reasonableness, and (2) counsel's deficient performance prejudiced the defense because there was a reasonable probability that the outcome of the proceedings would have been different had it not been for the deficient performance. . . . For claims of ineffective assistance of counsel arising out of the plea process, the United States Supreme Court has modified the second prong of the *Strickland* test to require that the petitioner produce evidence that there is a reasonable probability that, but for counsel's errors, [the petitioner] would not have pleaded guilty and would have insisted on going to trial. . . . An ineffective assistance of counsel claim will succeed only if both prongs [of *Strickland*] are satisfied. . . . It is axiomatic that courts may decide against a petitioner on either prong [of the *Strickland* test], whichever is easier." (Citations omitted; footnote omitted; internal quotation marks omitted.) *Flomo* v. *Commissioner of Correction*, 169 Conn. App. 266, 277–78, 149 A.3d 185 (2016), cert. denied, 324 Conn. 906, 152 A.3d 544 (2017). "In its analysis, a reviewing court may look to the performance prong or the prejudice prong, and the petitioner's failure to prove either is fatal to a habeas petition." (Internal quotation marks omitted.) *Colon* v. *Commissioner of Correction*, 179 Conn. App. 30, 36, 177 A.3d 1162 (2017), cert. denied, 328 Conn. 907, 178 A.3d 390 (2018).

"A claim of ineffective assistance of counsel raised by a petitioner who faces mandatory deportation as a consequence of his guilty plea is analyzed more particularly under *Padilla* v. *Kentucky*, [supra, 559 U.S. 356] . . . ." *Noze* v. *Commissioner of Correction*, 177 Conn. App. 874, 885, 173 A.3d 525 (2017). "In *Padilla* v. *Kentucky*, [supra, 369], the United States Supreme Court concluded that the federal constitution's guarantee of effective assistance of counsel requires defense counsel to accurately advise a noncitizen client of the immigration consequences of a guilty plea. In reaching this conclusion, the Supreme Court acknowledged that the

precise advice counsel must give depends on the clarity of the consequences specified by federal immigration law. . . . The precise consequences depend on a number of factors, including the crime committed, the client's criminal history and immigration status, and in some circumstances the exercise of discretion by federal authorities." (Citation omitted.) *Budziszewski* v. *Commissioner of Correction*, 322 Conn. 504, 511, 142 A.3d 243 (2016).

In *Budziszewski*, our Supreme Court specifically set forth the advice criminal defense counsel must provide to a noncitizen client who is considering pleading guilty to a crime in which deportation pursuant to federal law is a consequence of a conviction. "For crimes designated as aggravated felonies . . . federal law mandates deportation almost without exception. . . . We conclude that, for these types of crimes, *Padilla* requires counsel to inform the client about the deportation consequences prescribed by federal law. . . . Because noncitizen clients will have different understandings of legal concepts and the English language, there are no precise terms or one-size-fits-all phrases that counsel must use to convey this message. Rather, courts reviewing a claim that counsel did not comply with *Padilla* must carefully examine all of the advice given and the language actually used by counsel to ensure that counsel explained the consequences set out in federal law accurately and in terms the client could understand. In circumstances when federal law mandates deportation and the client is not eligible for relief under an exception to that command, counsel must unequivocally convey to the client that federal law mandates deportation as the consequence for pleading guilty." (Citations omitted.) Id., 507.

"The [ultimate] conclusions reached by the [habeas] court in its decision [on a] habeas petition are matters of law, subject to plenary review. . . . [When] the legal conclusions of the court are challenged, [the reviewing court] must determine whether they are legally and logically correct . . . and whether they find support in the facts that appear in the record. . . . To the extent that factual findings are challenged, this court cannot disturb the underlying facts found by the habeas court unless they are clearly erroneous. . . . [A] finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . A reviewing court ordinarily will afford deference to those credibility determinations made by the habeas court on the basis of [the] firsthand observation of [a witness'] conduct, demeanor and attitude." (Citation omitted; internal quotation marks omitted.) *Flomo* v. *Commissioner of Correction*, supra, 169 Conn. App. 278–79. Mindful of these legal principles, we next turn to the

petitioner's sole claim on appeal that the court improperly rejected his claim that he received ineffective assistance of counsel due to his attorney's failure to advise him properly of the immigration consequences of his guilty plea. We need not examine Skiber's representation of the petitioner under the performance prong because the petitioner has failed to demonstrate that he was prejudiced by Skiber's allegedly deficient performance.

The petitioner argues that the court improperly concluded that he was not prejudiced as a result of Skiber's deficient performance. Specifically, he argues that, pursuant to the United States Supreme Court's decision in *Lee* v. *United States*,      U.S.     , 137 S. Ct. 1958, 198 L. Ed. 2d 476 (2017), he demonstrated at the habeas trial that he was prejudiced because there was a reasonable probability that he would not have pleaded guilty if he had known that it would lead to mandatory deportation. We disagree.

In order to assess the petitioner's claim on appeal, a review of *Lee* is necessary. In *Lee*, the defendant, a lawful permanent resident from South Korea, appealed from the denial of his motion to vacate his conviction, claiming that he had received ineffective assistance of counsel due to his defense counsel's failure to advise him of the immigration consequences of his guilty plea pursuant to *Padilla*. Id., 1962. It was undisputed that defense counsel deficiently performed because the defendant was erroneously advised that he would not be deported as a result of pleading guilty to possession of ecstasy with intent to distribute, an aggravated felony. Id., 1963. As a result, the sole issue on appeal was whether the defendant had been prejudiced by his defense counsel's deficient performance. Id., 1964.

The court, in accordance with its prior decision in *Hill* v. *Lockhart*, 474 U.S. 52, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985), determined that "[w]hen a defendant alleges his counsel's deficient performance led him to accept a guilty plea rather than go to trial," "[w]e . . . consider whether the defendant was prejudiced by the denial of the entire judicial proceeding . . . to which he had a right. . . . [W]hen a defendant claims that his counsel's deficient performance deprived him of a trial by causing him to accept a plea, the defendant can show prejudice by demonstrating a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." (Citations omitted; internal quotation marks omitted.) *Lee* v. *United States*, supra, 137 S. Ct. 1965. The court recognized that a criminal defendant who faces deportation as a consequence of his or her guilty plea may instead insist on proceeding to trial even if the chances of success are remote because there remains a possibility at trial that the defendant will be acquitted and will not face the onerous punishment of deporta-

tion. Id., 1966–67. Nevertheless, the court emphasized that a post hoc assertion that an individual would not have pleaded guilty but for his or her attorney's deficient performance was not enough to establish prejudice absent contemporaneous evidence to support such an assertion. Id., 1967.

The court determined that the defendant's claim that he would not have accepted the plea agreement had he known that it would lead to deportation was "backed by substantial and uncontroverted evidence." Id., 1969. The court further explained that "[i]n the unusual circumstances of this case," the defendant adequately demonstrated a reasonable probability that he would not have pleaded guilty had he known that it would lead to mandatory deportation and that he instead would have proceeded to trial. Id., 1967. To support its conclusion, the court stated that there was "no question" that deportation was the determinative issue in the defendant's decision to enter a guilty plea. Id. The court noted that the defendant repeatedly asked his attorney if there was any risk of deportation, both the defendant and his attorney testified at a hearing on his motion to vacate his conviction that the defendant would have gone to trial had he known about the deportation consequences associated with his guilty plea, and that the defendant, when asked during his plea canvass if the possibility that he could be deported affected his decision to plead guilty, answered in the affirmative and only proceeded to plead guilty once his defense counsel assured him that the judge's question was a "standard warning." Id., 1967–68.

Additionally, the court recognized that the defendant had strong connections to the United States since he had lived in the country for three decades and was caring for his elderly parents, and that the consequences of taking a chance at trial to avoid deportation were not significantly harsher than pleading guilty and facing certain deportation because the defendant faced only a year or two of additional prison time if he went to trial as opposed to pleading guilty. Id., 1968–69.

The court concluded "[w]e cannot agree that it would be irrational for a defendant in [the defendant's] position to reject the plea offer in favor of trial. But for his attorney's incompetence, [the defendant] would have known that accepting the plea agreement would *certainly* lead to deportation. Going to trial? *Almost* certainly. If deportation were the 'determinative issue' for an individual in plea discussions, as it was for [the defendant]; if that individual had strong connections to this country and no other, as did [the defendant]; and if the consequences of taking a chance at trial were not markedly harsher than pleading, as in this case, that [almost certainty of being deported] could make all the difference." (Emphases in original.) Id. Applying the rationale of *Lee*, we now turn to the petitioner's claim.

The petitioner argues that he was concerned about being deported during the duration of the criminal proceedings against him and that, like the defendant in *Lee*, there is substantial evidence to support his assertion that he would not have pleaded guilty if he had known that it would lead to mandatory deportation. We reject the petitioner's claim.

The habeas court credited Skiber's testimony that avoiding "double digit" incarceration was the petitioner's primary concern.[6] To support its conclusion, the habeas court found credible Skiber's testimony that proceeding to trial, even with a "good" suppression issue, was "extremely risky" given that the petitioner was facing a "double digit" period of incarceration if found guilty. The habeas court further cited Skiber's testimony that he needed to weigh the prospect of the petitioner accepting an offer and being exposed to no jail time versus losing at trial and facing "astronomical" criminal exposure.[7] Skiber described the petitioner's potential criminal exposure as a "huge consideration," along with the immigration consequences of his plea.[8] Additionally, as noted in the habeas court's memorandum of decision, there was no evidence presented at the habeas trial to suggest that the petitioner would have been willing to accept a plea deal that included a longer sentence in exchange for pleading guilty to offenses that were less likely to lead to his deportation. The record is also devoid of any evidence that the petitioner, after being deemed ineligible for accelerated rehabilitation, would have been offered an alternative pretrial diversionary program.

In addition, the petitioner's testimony that he would have proceeded to trial had he known the immigration consequences of his guilty plea was belied by testimony adduced at the habeas trial that the petitioner was at least aware of the potential immigration consequences he faced as a result of his guilty plea. See *United States* v. *Delhorno*, 915 F.3d 449, 454 (7th Cir. 2019) (defendant not prejudiced given likelihood of conviction and long sentence in addition to defendant's awareness of immigration issues); *Dodd* v. *United States*, 709 Fed. Appx. 593, 595 (11th Cir. 2017) (defendant who was aware of possibility of deportation and did not show concern about deportation at plea hearing or sentencing was not prejudiced by deficient performance). The habeas court noted in its memorandum of decision that "[o]f the utmost import," the petitioner testified that he understood that, after he entered his guilty plea and applied for accelerated rehabilitation, he would be deported if he was found ineligible for accelerated rehabilitation, but later stated that he did not think that he would be deported when he pleaded guilty. Moreover, Skiber testified that, on several occasions, the two of them had discussed the immigration issues associated with the petitioner's case and that it was his understand-

ing that the petitioner knew of the immigration consequences.

Skiber also testified that he twice went through the plea canvass with the petitioner; once prior to the petitioner entering his guilty plea and once after the petitioner had agreed to a sentence of five years' incarceration, execution suspended, with three years of probation. The petitioner stated on the record during the trial court's canvass that he understood that his guilty plea may lead to his deportation. In contrast, as previously noted, the defendant in *Lee* expressed on the record during the plea canvass that the possibility that he could be deported affected his decision to plead guilty and he did not proceed to plead guilty until he was reassured by his counsel that the judge's question was only a "standard warning." *Lee* v. *United States*, supra, 137 S. Ct. 1967–68.

Unlike the defendant in *Lee*, the punishment the petitioner in the present case faced if he went to trial was markedly harsher than the punishment he received as a result of his guilty plea. As previously discussed, the habeas court stated in its memorandum of decision that the petitioner faced several felony charges, some of which carried a mandatory minimum sentence, if he proceeded to trial. The trial court also remarked at the plea canvass that the petitioner faced twelve years of exposure for the charges to which he ultimately pleaded guilty. In contrast, the petitioner's plea agreement resulted in a suspended sentence and three years of probation.[9]

On the basis of our review of the record, we conclude that the habeas court's conclusion is legally and logically correct and is supported by the facts that appear in the record. Accordingly, we hold that the petitioner has failed to demonstrate that he was prejudiced by his counsel's allegedly deficient performance because he did not adequately demonstrate a reasonable probability that he would not have pleaded guilty had he known that it would lead to certain deportation and that he instead would have proceeded to trial.[10] Accordingly, the petitioner's claim of ineffective assistance of counsel must fail.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Although the parties did not disclose what crimes the petitioner was initially charged with, we may take judicial notice of the file in the underlying criminal case. See *St. Paul's Flax Hill Co-operative* v. *Johnson*, 124 Conn. App. 728, 739 n.10, 6 A.3d 1168 (2010), cert. denied, 300 Conn. 906, 12 A.3d 1002 (2011).

[2] The record does not disclose the exact charge to which the petitioner would have pleaded guilty.

[3] The petitioner testified at the habeas trial that his understanding of the offer was that he would receive two years of incarceration followed by three years of probation. The specific nature of this plea offer is immaterial to the resolution of this appeal.

[4] General Statutes § 54-56e (b) (2) provides in relevant part: "The court may, in its discretion, invoke [accelerated rehabilitation] on motion of the

defendant or on motion of a state's attorney or prosecuting attorney with respect to a defendant . . . who has no previous record of conviction of a crime . . . ."

[5] Skiber testified that he did not specifically tell the petitioner that this offer would cause him to be deported.

[6] We reiterate the well settled principle that "we must defer to the finder of fact's evaluation of the credibility of the witnesses that is based on its invaluable firsthand observation of their conduct, demeanor and attitude. . . . [The fact finder] is free to juxtapose conflicting versions of events and determine which is more credible. . . . It is the [fact finder's] exclusive province to weigh the conflicting evidence and to determine the credibility of witnesses. . . . The [fact finder] can . . . decide what—all, none or some—of a witness' testimony to accept or reject." (Citation omitted; internal quotation marks omitted.) *State* v. *Colon*, 117 Conn. App. 150, 154, 978 A.2d 99 (2009).

[7] The habeas court stated in its memorandum of decision that the petitioner would have faced at trial several felony charges, some of which required mandatory minimum periods of incarceration. According to the habeas court, once the petitioner agreed to a plea deal, the state did not pursue those charges.

[8] Skiber specifically testified that "if we weren't successful [on a motion to suppress], the maximum penalties he would be facing would be astronomical. And that was, you know, a huge consideration just as immigration issues were also our consideration . . . *if not more*." (Emphasis added.)

[9] We acknowledge that, like the defendant in *Lee*, the petitioner does have strong personal ties to the United States and nowhere else. Nevertheless, the ties to the United States are only one factor to consider in determining whether he was prejudiced by Skiber's allegedly deficient performance. As we have set forth in this opinion, aside from his ties to the United States, the petitioner's case is materially distinguishable from *Lee*.

[10] Additionally, the petitioner essentially argues in his appellate brief that the habeas court, while addressing the prejudice prong in its analysis, erroneously factored into its ruling the fact that the department listed other grounds besides his criminal conviction as justification for deporting him. Specifically, the petitioner states that this conclusion was erroneous because he was in the process of securing documentation to remain in the country at the time of his arrest and the United States had never tried to deport him before learning of his criminal conviction. Even if we were to agree with the petitioner that the habeas court erred in this respect, it does not affect the propriety of our decision.

---