******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

MACKENZY NOZE *v.* COMMISSIONER
OF CORRECTION
(AC 39233)

Alvord, Sheldon and Mullins, Js.*

*Syllabus*

The petitioner, a citizen of Haiti, sought a writ of habeas corpus, claiming
that his trial counsel had provided ineffective assistance by failing to
advise him adequately as to the immigration consequences of his plea
of guilty to a certain drug related offense that subjected him to mandatory
deportation. The petitioner initially was charged with offenses that
exposed him to sixty years imprisonment before he pleaded guilty and
received a lesser sentence under a plea agreement offered by the state.
The habeas court rendered judgment denying the habeas petition and,
thereafter, denied the petition for certification to appeal, and the peti-
tioner appealed to this court. *Held* that the habeas court did not abuse
its discretion in denying the petition for certification to appeal: that
court properly determined that the petitioner failed to demonstrate that
he was prejudiced by his trial counsel's allegedly deficient performance,
the petitioner having failed to show that, absent counsel's failure to
adequately inform him regarding the immigration consequences of his
plea, it was reasonably probable that he would have rejected the plea
agreement and insisted on going to trial; moreover, the habeas court's
finding that the petitioner was well aware that his conviction of the initial
charges was virtually inevitable and that deportation was realistically
unavoidable was not clearly erroneous, as the court was free to credit
his trial counsel's testimony that the petitioner was not concerned about
the immigration consequences of the plea and wanted to receive the
shortest possible period of incarceration, which he accomplished by
accepting the plea agreement, and to reject the petitioner's testimony
that he would have rejected the proposed plea agreement and gone to
trial had he been advised adequately.

Argued September 11—officially released November 7, 2017

*Procedural History*

Amended petition for a writ of habeas corpus,
brought to the Superior Court in the judicial district of
Tolland and tried to the court, *Sferrazza, J.*; judgment
denying the petition; thereafter, the court denied the
petition for certification to appeal, and the petitioner
appealed to this court. *Appeal dismissed.*

*Daniel Fernandes Lage*, assigned counsel, for the
appellant (petitioner).

*James M. Ralls*, assistant state's attorney, with
whom, on the brief, were *Michael L. Regan*, state's
attorney, and *Thomas M. DeLillo*, senior assistant
state's attorney, for the appellee (respondent).

*Opinion*

SHELDON, J. The petitioner, Mackenzy Noze, a citizen of Haiti, appeals following the denial of his petition for certification to appeal from the judgment of the habeas court denying his petition for a writ of habeas corpus. In his amended petition, the petitioner claimed that his right to the effective assistance of counsel under the sixth and fourteenth amendments to the United States constitution was violated by trial counsel's failure to warn him, clearly and unequivocally, of the mandatory deportation consequences of his guilty plea to the charge of possession of narcotics with intent to sell in violation of General Statutes § 21a-277 (a). Before this court, the petitioner claims that the habeas court erred in denying his claim of ineffective assistance of counsel and later abused its discretion in denying his petition for certification to appeal from that denial. We conclude that the habeas court did not abuse its discretion in denying the petition for certification to appeal from its judgment, and thus we dismiss this appeal.

The record reveals the following relevant facts and procedural history. The petitioner initially was charged with three counts of sale of crack cocaine in violation of General Statutes § 21a-278 (b), each of which carried a maximum possible prison sentence of twenty years incarceration.[1] On July 24, 2012, the petitioner appeared before the court, *Kwak, J.*, accompanied by his private counsel, Ryan P. Barry of Barry & Barall, LLC, and pleaded guilty, pursuant to a plea agreement, to a substitute information charging him with one count of possession of narcotics with intent to sell in violation of § 21a-277 (a), a lesser offense that carried a maximum possible prison sentence of fifteen years incarceration. Under the terms of the plea agreement, the state agreed to recommend a sentence of seven years incarceration, execution suspended after twenty months, followed by two years probation on terms and conditions to be determined by the court after the preparation of a presentence investigation report, with the petitioner reserving the right to argue for a lesser sentence. Although there was an indication on the record that the court's likely sentence in the event of a guilty plea had been discussed in chambers before the petitioner entered his plea, the particulars of that likely sentence were not recited for the record.

At the plea proceeding, the prosecutor stated the following factual basis for the record. On or about October 21, 2011, within the city of Norwich, the petitioner sold a small amount of a white substance to a confidential police informant in return for recorded funds. The confidential informant turned the substance over to the police, who submitted a portion of it for chemical testing. The substance tested positive for cocaine. The petitioner later was arrested on a warrant and charged

with three counts of sale of narcotics.

The court then canvassed the petitioner in detail about the nature and consequences of his plea. At the end of its canvass, the court inquired of the petitioner as follows as to his general awareness that, if he were not a United States citizen, his plea could have certain adverse immigration consequences:

"The Court: If you're not a [United States] citizen, with this conviction you may face consequences of deportation, exclusion from readmission or denial of naturalization. You understand that, sir? You have to answer verbally so we can hear you.

"[The Petitioner]: No.

"The Court: Okay. Let me ask that question again. If you're not a [United States] citizen, with this conviction you may face consequences of deportation, exclusion from readmission or denial of naturalization. You understand that, sir? Do you understand the question?

"[The Petitioner]: Yes, I do.

"The Court: Okay. You understand that, right, it could have consequences if you're not a [United States] citizen; yes?

"[The Petitioner]: Yes.

"Attorney Barry: Your Honor, we've talked about this before. My notes reflect that, and [I've] reviewed them again this morning. I'm not an immigration lawyer; I advised him to consult with an immigration attorney.

"The Court: Okay."

The court accepted the petitioner's plea after finding, inter alia, that there was a factual basis for his plea and that the plea had been made "voluntarily and knowingly," with the assistance of competent counsel.

On October 3, 2012, after the presentence investigation report was completed, the petitioner appeared before a different judicial authority, *McMahon, J.*, accompanied by Attorney Michael J. Dyer of Barry & Barall, LLC. The court sentenced the petitioner on that date, after a conversation between all counsel and with Judge McMahon in chambers, to four years incarceration, execution suspended after one year, followed by two years probation.

On June 2, 2014, after he had completed the nonsuspended portion of his sentence, the petitioner was detained by immigration authorities. Then, as now, he was subject to mandatory deportation as a result of his guilty plea because the offense of possession of narcotics with intent to sell is an "aggravated felony" under federal law.[2]

On June 30, 2014, the petitioner filed his original petition for a writ of habeas corpus in this case. He later filed an amended petition on December 12, 2014.

The amended petition contained one count, alleging that the petitioner's private counsel, Attorney Barry, had not advised him adequately before his plea that a conviction of the offense to which he was pleading guilty would result in his mandatory deportation to Haiti. The petitioner contended that such inadequate advice violated his constitutional right to the effective assistance of counsel.

The habeas court conducted a trial on the merits of the amended petition on October 27, 2015. In addition to his own testimony, the petitioner presented testimony from Barry and Attorney Anthony Collins, an expert on immigration law. The respondent, the Commissioner of Correction, presented no evidence at the habeas trial.

At the habeas trial, the petitioner testified that Barry never told him that his guilty plea would cause him to be deported. He claimed that he would have gone to trial on the original charges against him, instead of pleading guilty, had he known that his guilty plea would cause him to be deported. When questioned as to whether Barry had discussed with him the strength of the state's case against him, the petitioner first denied that any such conversation had taken place. Instead, he testified that Barry had told him that the plea agreement was a good deal and that he previously had represented other clients charged with the same offense who had not been detained by immigration authorities after they pleaded guilty and were sentenced. When asked whether Barry had attempted to set up an appointment for him with an immigration attorney, and whether he had rejected such a meeting after telling Barry that he was not worried about deportation, but instead wanted to take the good deal that had been offered to him, the petitioner denied both that any appointment with immigration counsel ever had been arranged for him and that he ever had told Barry that he was not concerned about deportation.

Barry testified that he had discussed the immigration consequences of pleading guilty in every conversation he had had with the petitioner concerning his case. He stated that the petitioner had told him that he was not worried about immigration and just wanted to get the best plea deal that Barry could negotiate for him. Barry recalled telling the petitioner in one conversation that he should not go to trial because, if he were convicted, he could receive a total prison sentence of sixty years incarceration, and thus could be stuck in prison for a long time before being sent out of the country. He also told the petitioner that it would be difficult for him to remain in the United States because the state's evidence against him was very strong. Indeed, he recalled telling the petitioner that the state had him "dead to rights on [his three original charges of] sales [of cocaine]." Barry further testified that he had called two immigration attorneys and e-mailed one of them, asking that attorney

to meet with the petitioner, but that the petitioner had not met with any immigration attorney, stating that he did not need such a meeting. Barry stated that he never had any indication from the prosecutor that the petitioner might ever receive a better plea offer than the one he received and thus that the petitioner's only options were to plead guilty to a single count of possession of narcotics with intent to sell under § 21a-277 (a) under the agreement he negotiated or to go to trial on the three original sales charges under § 21a-278 (b).

On April 20, 2016, the court issued a memorandum of decision denying the petition for a writ of habeas corpus. In the decision, the court found credible Barry's testimony that he had discussed the high probability of deportation with the petitioner, and that he had urged the petitioner to seek advice from an immigration lawyer and personally arranged an appointment with such a lawyer for him. The court also credited Barry's testimony that the petitioner had not been concerned about being deported. On that score, the court found that the petitioner's primary goal in seeking a plea bargain was to obtain the shortest possible prison sentence, and that he accomplished this goal by accepting a guilty plea that resulted in a total effective sentence of one year of confinement. The court expressly rejected the petitioner's testimony that his counsel never had informed him that his guilty plea would result in his mandatory deportation and his claim that, had he understood that deportation would be the mandatory consequence of his plea, he would have rejected the proposed plea bargain and gone to trial.

Rather than analyzing whether Barry's previously described performance was deficient under prevailing federal and state constitutional standards, the court focused its analysis on whether the petitioner had established that he was prejudiced by his counsel's allegedly deficient performance. The court concluded that the petitioner had not satisfied his burden of proving prejudice, finding in relevant part: "Given the overwhelming evidence against him, the petitioner was well aware that conviction for [the] sale of cocaine was virtually inevitable. He consistently dismissed Attorney Barry's admonitions regarding deportation as playing a minimal role in his decision to accept the negotiated plea agreement. This decision was eminently reasonable because deportation was realistically unavoidable. A lighter sentence became of paramount concern. So much so, that the petitioner found that showing up for [the] appointment with an immigration lawyer, which Attorney Barry arranged for him, was unnecessary. The court concludes that the petitioner's habeas testimony to the contrary is unworthy of belief and is the product of his desire to avoid paying the piper."

After the habeas court issued its memorandum of decision, the petitioner petitioned for certification to

appeal. On May 3, 2016, the habeas court denied the petition for certification. This appeal followed.

I

The petitioner claims that the habeas court abused its discretion in denying his petition for certification to appeal from the denial of his petition for a writ of habeas corpus on his claim of ineffective assistance of counsel. "Faced with a habeas court's denial of a petition for certification to appeal, a petitioner can obtain appellate review of the dismissal of his petition for habeas corpus only by satisfying the two-pronged test enunciated by our Supreme Court in *Simms* v. *Warden*, 229 Conn. 178, 640 A.2d 601 (1994), and adopted in *Simms* v. *Warden*, 230 Conn. 608, 612, 646 A.2d 126 (1994). First, [the petitioner] must demonstrate the denial of his petition for certification constituted an abuse of discretion. . . . Second, if the petitioner can show an abuse of discretion, he must then prove that the decision of the habeas court should be reversed on the merits. . . . To prove that the denial of his petition for certification to appeal constituted an abuse of discretion, the petitioner must demonstrate that the [resolution of the underlying claim involves issues that] are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further. . . . In determining whether the habeas court abused its discretion in denying the petitioner's request for certification, we necessarily must consider the merits of the petitioner's underlying claims to determine whether the habeas court reasonably determined that the petitioner's appeal was frivolous. In other words, we review the petitioner's substantive claims for the purpose of ascertaining whether those claims satisfy one or more of the three criteria . . . adopted by [our Supreme Court] for determining the propriety of the habeas court's denial of the petition for certification." (Internal quotation marks omitted.) *Duncan* v. *Commissioner of Correction*, 171 Conn. App. 635, 644–45, 157 A.3d 1169, cert. denied, 325 Conn. 923, 159 A.3d 1172 (2017), quoting *Sanders* v. *Commissioner of Correction*, 169 Conn. App. 813, 821–22, 153 A.3d 8 (2016), cert. denied, 325 Conn. 904, 156 A.3d 536 (2017); see also *Vazquez* v. *Commissioner of Correction*, 123 Conn. App. 424, 428–29, 1 A.3d 1242 (2010), cert. denied, 302 Conn. 901, 23 A.3d 1241 (2011). With these principles in mind, we turn to the merits of the petitioner's substantive claim that his trial counsel rendered ineffective assistance by failing to warn him, clearly and unequivocally, of the mandatory deportation consequences of his conviction on the charge to which he entered his plea of guilty.

II

The petitioner claims that the habeas court improperly rejected his claim that he received ineffective assistance of counsel in connection with his guilty plea

because his counsel failed to advise him adequately as to the mandatory immigration consequences of that plea. Specifically, the petitioner claims that counsel's failure to so advise him prejudiced him because there is a reasonable probability that, but for such allegedly deficient advice, he would not have pleaded guilty but instead would have insisted on going to trial on the original charges against him. Because we conclude not only that the habeas court properly determined that the petitioner failed to demonstrate that he was prejudiced by counsel's allegedly deficient performance, but also that, upon the facts found, there is no issue that could be debatable among jurists of reason, no court could resolve the issues in a different manner and there are no questions adequate to deserve encouragement to proceed further, we find that the habeas court did not abuse its discretion in denying the petition for certification to appeal.

We begin our analysis with the legal principles that govern our review of the petitioner's claim. "A criminal defendant is constitutionally entitled to adequate and effective assistance of counsel at all critical stages of criminal proceedings. . . .[3] This right arises under the sixth and fourteenth amendments to the United States constitution and article first, § 8, of the Connecticut constitution. . . . It is axiomatic that the right to counsel is the right to the effective assistance of counsel. . . .

"A claim of ineffective assistance of counsel is governed by the two-pronged test set forth in *Strickland* v. *Washington*, [466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)]. Under *Strickland*, the petitioner has the burden of demonstrating that (1) counsel's representation fell below an objective standard of reasonableness, and (2) counsel's deficient performance prejudiced the defense because there was a reasonable probability that the outcome of the proceedings would have been different had it not been for the deficient performance. . . . For claims of ineffective assistance of counsel arising out of the plea process, the United States Supreme Court has modified the second prong of the *Strickland* test to require that the petitioner produce evidence that there is a reasonable probability that, but for counsel's errors, [the petitioner] would not have pleaded guilty and would have insisted on going to trial. . . . An ineffective assistance of counsel claim will succeed only if both prongs [of *Strickland*] are satisfied." (Footnote in original; internal quotation marks omitted.) *Flomo* v. *Commissioner of Correction*, 169 Conn. App. 266, 277–78, 149 A.3d 185 (2016), cert. denied, 324 Conn. 906, 152 A.3d 544 (2017), quoting *Thiersaint* v. *Commissioner of Correction*, 316 Conn. 89, 100–101, 111 A.3d 829 (2015); see also *Hill* v. *Lockhart*, 474 U.S. 52, 59, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985) (modifying *Strickland* prejudice analysis in cases in which petitioner entered guilty plea). "It is axiomatic that courts

may decide against a petitioner on either prong [of the *Strickland* test], whichever is easier." *Lewis* v. *Commissioner of Correction*, 165 Conn. App. 441, 451, 139 A.3d 759, cert. denied, 322 Conn. 901, 138 A.3d 931 (2016), citing *Strickland* v. *Washington*, supra, 697 ("a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the [petitioner]").

A claim of ineffective assistance of counsel raised by a petitioner who faces mandatory deportation as a consequence of his guilty plea is analyzed more particularly under *Padilla* v. *Kentucky*, 559 U.S. 356, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010), a case in which the United States Supreme Court held that counsel must inform clients accurately as to whether a guilty plea carries a risk of deportation. Id., 368–69. *Padilla* recently was analyzed under Connecticut law in *Budziszewski* v. *Commissioner of Correction*, 322 Conn. 504, 507, 142 A.3d 243 (2016), where our Supreme Court concluded that, although "there are no precise terms or one-size-fits-all phrases that counsel must use . . . [i]n circumstances when federal law mandates deportation . . . counsel must unequivocally convey to the client that federal law mandates deportation as the consequence for pleading guilty."

"The [ultimate] conclusions reached by the [habeas] court in its decision [on a] habeas petition are matters of law, subject to plenary review. . . . [When] the legal conclusions of the court are challenged, [the reviewing court] must determine whether they are legally and logically correct . . . and whether they find support in the facts that appear in the record. . . . To the extent that factual findings are challenged, this court cannot disturb the underlying facts found by the habeas court unless they are clearly erroneous. . . . [A] finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . A reviewing court ordinarily will afford deference to those credibility determinations made by the habeas court on the basis of [the] firsthand observation of [a witness'] conduct, demeanor and attitude." (Citation omitted; internal quotation marks omitted.) *Flomo* v. *Commissioner of Correction*, supra, 169 Conn. App. 278–79.

To satisfy the prejudice prong, the petitioner had the burden to prove that, absent counsel's alleged failure to advise him in accordance with *Padilla*, it is reasonably probable that he would have rejected the state's plea offer and elected to go to trial. See *Hill* v. *Lockhart*, supra, 474 U.S. 59. In evaluating whether the petitioner had met this burden and evaluating the credibility of the petitioner's assertions that he would have gone to trial, it was appropriate for the court to consider

whether "a decision to reject the plea bargain would have been rational under the circumstances." *Padilla* v. *Kentucky*, supra, 559 U.S. 372. The habeas court made an explicit finding that the petitioner "was well aware that conviction for [the] sale of cocaine was virtually inevitable. . . . This decision was eminently reasonable because deportation was realistically unavoidable. A lighter sentence became of paramount concern." That finding is not clearly erroneous because it is supported by Barry's testimony at the habeas trial that he informed the petitioner of the strength of the state's case against him and the petitioner told him that he was not concerned about the immigration consequences of a plea, but instead wanted Barry to get him the shortest possible sentence. The court was free to credit Barry's testimony that the petitioner was not concerned about the immigration consequences of his plea and that he simply wanted to receive the shortest possible period of incarceration—that he in fact requested Barry obtain him a sentence of four years incarceration suspended after one year—which he accomplished by accepting the plea agreement that his attorney negotiated.

The court similarly was free to reject the petitioner's testimony at the habeas trial that he would have rejected the proposed plea agreement and gone to trial had he been advised that he would almost certainly face deportation as a result of his plea. The court could have found that testimony not credible and unreasonable, particularly in light of its rejection of the petitioner's assertions that Barry did not discuss potential immigration consequences of the plea with him or attempt to set up an appointment for him with an immigration attorney, and because the petitioner faced the real possibility, if he had chosen to go to trial and lost, of receiving a much longer sentence before being deported. It is simply not the role of this court on appeal to second-guess credibility determinations made by the habeas court. *Martin* v. *Commissioner of Correction*, 141 Conn. App. 99, 104, 60 A.3d 997, cert. denied, 308 Conn. 923, 94 A.3d 638 (2013).

In the present case, the habeas court elected not to decide whether Barry's performance was deficient. Rather, it denied the habeas petition on the basis of its determination that the petitioner's ineffective assistance claim failed on the prejudice prong of the *Strickland-Hill* test. According to the habeas court, the petitioner failed to satisfy his burden of proving prejudice because he did not show that, but for Barry's allegedly deficient performance, it is reasonably probable that he would have rejected the plea agreement offered by the state and instead insisted on going to trial. On the basis of the habeas court's factual determinations, which are not clearly erroneous, and its credibility determinations, we conclude that no court could resolve the issues presented in this appeal in a different manner.

The appeal is dismissed.

In this opinion the other judges concurred.

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

[1] Because § 21a-278 provides penalties for sale of cocaine by a nondrug-dependent person, if the petitioner had shown that he was drug-dependent, each charge would have carried a maximum sentence of fifteen years incarceration pursuant to § 21a-277.

[2] See 8 U.S.C. § 1227 (a) ("[a]ny alien . . . in and admitted to the United States shall . . . be removed . . . [2] [A] . . . [iii] . . . who is convicted of an aggravated felony at any time after admission"). Violation of any law or regulation of a state relating to a controlled substance as defined in 21 U.S.C. § 802 is an aggravated felony, and cocaine is a schedule II drug under federal law. See 21 U.S.C. § 812 (2012). Thus, a conviction under § 21a-277 (a) subjects a defendant to mandatory removal under federal law.

[3] It is well settled that "critical stages" include those related to the entering of a guilty plea. See *Missouri* v. *Frye*, 566 U.S. 134, 140, 132 S. Ct. 1399, 182 L. Ed. 2d 379 (2012).

————————————————