******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

TAJAY HEYWOOD *v.* COMMISSIONER
OF CORRECTION
(AC 44198)

Cradle, Clark and Norcott, Js.

*Syllabus*

The petitioner, a citizen of Jamaica, sought a writ of habeas corpus, claiming that his trial counsel, R, had provided ineffective assistance by failing to unequivocally advise him that a guilty plea to the charge of risk of injury to a child would subject him to mandatory deportation. The petitioner initially was charged with offenses that exposed him to 160 years of incarceration before he pleaded guilty and received a lesser sentence, with the potential of no jail time, under a plea agreement offered by the state. The habeas court rendered judgment denying the habeas petition, concluding that, although R had rendered deficient performance by failing to clearly and unambiguously convey to the petitioner the certainty of his deportation, the petitioner had failed to demonstrate that he was prejudiced by that performance. Following the granting of the petition for certification to appeal, the petitioner appealed to this court. *Held* that the petitioner could not prevail on his claim that the habeas court improperly concluded that he had failed to satisfy the prejudice prong of *Strickland* v. *Washington* (466 U.S. 668); the court's conclusion that the petitioner had not satisfied the prejudice prong was supported by evidence in the record that the court found to be credible, namely, R's testimony that the petitioner was concerned with both the risk of deportation and the risk of incarceration, the state's case against the petitioner was strong, and it was likely that, if the petitioner had gone to trial and been convicted, the petitioner would have received a sentence of thirty years of incarceration; moreover, the court, having assessed the petitioner's testimony and having considered whether the petitioner rationally would have rejected the plea offer had he known that accepting it would result in mandatory deportation, did not find the petitioner's testimony to be credible.

Argued December 1, 2021—officially released March 8, 2022

*Procedural History*

Amended petition for a writ of habeas corpus, brought to the Superior Court in the judicial district of Tolland and tried to the court, *Chaplin, J.*; judgment denying the petition, from which the petitioner, on the granting of certification, appealed to this court. *Affirmed*.

*Mary Boehlert*, assigned counsel, for the appellant (petitioner).

*Timothy J. Sugrue*, assistant state's attorney, with whom, on the brief, were *Joseph T. Corradino*, state's attorney, and *Susan M. Campbell*, assistant state's attorney, for the appellee (respondent).

*Opinion*

NORCOTT, J. The petitioner, Tajay Heywood, appeals, following the granting of his petition for certification to appeal, from the judgment of the habeas court denying his amended petition for a writ of habeas corpus. The petitioner claims that the habeas court improperly concluded that he failed to establish that he was prejudiced as a result of his trial counsel's deficient performance. We disagree and, accordingly, affirm the judgment of the court.

The following facts and procedural history are relevant to this appeal. The petitioner was born in Jamaica and moved to the United States with his family when he was eight years old. The petitioner was a lawful permanent resident of the United States and remained a citizen of Jamaica. On October 6, 2015, the petitioner was arrested as a result of allegations by a thirteen year old girl that he had sexually assaulted her on four occasions.[1] The petitioner was charged with four counts of sexual assault in the second degree in violation of General Statutes § 53a-71 (a) (1), and four counts of risk of injury to a child in violation of General Statutes § 53-21 (a) (2). Those charges carried with them a potential maximum term of 160 years of incarceration, including a potential three year mandatory minimum period of incarceration.[2]

The state offered the petitioner a plea agreement pursuant to which the petitioner would plead guilty to one count of sexual assault in the second degree in exchange for a sentence of ten years of incarceration, suspended after four years to serve, with a right to argue down to the nine month mandatory minimum period of incarceration, followed by ten years of probation. The petitioner rejected that offer and intended to proceed to trial. On the day that evidence was set to begin, and after jury selection was completed, the state offered the petitioner a plea agreement with more favorable terms. Specifically, the petitioner would plead guilty to one count of risk of injury to a child in exchange for a sentence of ten years of incarceration, execution suspended after four years, with a right to argue for less, followed by ten years of probation. Because the petitioner had the right to argue for a lesser period of incarceration, he potentially could have received no jail time. The petitioner accepted that offer.

On May 31, 2017, the petitioner pleaded guilty to risk of injury to a child in violation of § 53-21 (a) (2). On August 11, 2017, the court, *Devlin, J.*, sentenced the petitioner to a total effective term of ten years of incarceration, execution suspended after nine months to serve, followed by ten years of probation. Pursuant to 8 U.S.C. §§ 1101 (a) (43) (A) and 1227 (a) (2) (A) (iii), a conviction under § 53-21 (a) (2) constitutes an aggravated felony for immigration purposes. On completion

of his jail term, but while in the custody of the Department of Correction, the petitioner was apprehended by federal immigration officials and subjected to deportation proceedings.

On May 23, 2018, the petitioner, as a self-represented litigant and while in federal immigration detention, filed the present habeas action. On May 25, 2018, the court granted the petitioner's request for the appointment of counsel. On July 5, 2018, the petitioner, through counsel, filed an amended petition for a writ of habeas corpus. The petitioner alleged that Attorney Frank Riccio II, who represented him in the criminal proceedings, provided him with ineffective assistance of counsel. The petitioner claimed in relevant part that Riccio "failed to unequivocally advise [him] . . . that entering a guilty plea under the terms of the plea agreement would make [him] subject to mandatory deportation . . . ."[3] The petitioner further alleged that "[t]here is a reasonable probability that—but for the petitioner's counsel's deficient performance—the petitioner would not have entered a guilty plea." At some point after filing his initial petition, the petitioner was deported to Jamaica on the ground that he had committed an aggravated felony related to the sexual abuse of a minor.

On September 30 and October 10, 2019, a trial was held before the habeas court, *Chaplin, J.* The petitioner presented his testimony[4] and the testimony of (1) Attorney Justin Conlon, an immigration attorney who served as an expert for the petitioner,[5] (2) Riccio, and (3) Attorney Tamara Relis, an immigration attorney who represented the petitioner during his removal proceedings.[6] Riccio testified that, based on the evidence to which he had access prior to jury selection, he believed the case to be "sort of a he said, she said to a degree." Riccio testified that the petitioner wanted to go to trial and challenge the victim's credibility, rather than plead guilty, and that the petitioner did not believe the victim would come to court to testify against him. He testified that, on the day that evidence was set to begin, however, the victim and her mother were present at the courthouse. He testified that, on that same day, he was presented for the first time with a report prepared by the Department of Children and Families (department), which contained the petitioner's admission to a department worker that he had sexually assaulted the victim. Riccio further testified that, prior to obtaining the report, he did not know that it existed and that the petitioner had not told him about it. He testified that the department's report was "pretty thorough" and that the petitioner provided the department worker with details that corroborated the victim's account of the assaults. Riccio characterized this report as "the most damaging evidence" against the petitioner and testified that "[there was] no exception to keep [the petitioner's admissions in the report] out" at trial.

Riccio then testified about the plea offer that the petitioner ultimately accepted. He testified that, in his experience representing criminal defendants, once a case goes on the trial list, the plea agreement offered by the state "virtually never gets better, especially if the evidence in the case improves for the state. Then the offer that was rejected is never reoffered and largely . . . never improves when jury selection is about to begin." Riccio also testified that, in his experience representing clients in sexual assault cases, the state had never offered one of his clients a plea agreement in which his client would plead guilty to a crime that would not be considered an aggravated felony. He testified: "[I]n fact, I don't think I've ever . . . been offered a nonjail disposition on a case like that. [The petitioner's case] was probably the first and only one [in which there was a] chance of a no jail disposition."

Riccio also testified about his communications with the petitioner regarding the immigration consequences of being found guilty. Several communications from Riccio to the petitioner were entered into evidence as full exhibits at the habeas trial. In a letter dated March 13, 2017, Riccio listed the charges against the petitioner and the maximum possible penalty, and stated that "conviction of any of these offenses will likely result in your deportation." The next day, Riccio sent an e-mail update with the same language. On May 18, 2017, Riccio sent another update, which stated: "The immigration [consequence] of being convicted of a felony is likely deportation." On May 24, 2017, Riccio sent an e-mail with the same language and added: "The only way to truly avoid immigration consequences is to win the trial with eight [not guilty] verdicts." On May 30, 2017, Riccio sent an e-mail to the petitioner noting that he had spoken to the prosecutor about a potential plea agreement that would allow the petitioner to plead guilty to risk of injury to a child and argue for no jail time. Riccio stated: "While it is still a felony, there is a good chance of no jail. I understand that this still creates adverse immigration consequences, however there is a slightly lesser risk of deportation since you will not be incarcerated, thereby making it more difficult for [Immigration and Customs Enforcement (ICE)] to bother you." On May 31, 2017, after the petitioner accepted the state's plea agreement and entered a guilty plea, Riccio sent an e-mail to the petitioner in which he stated: "There will . . . likely [be] immigration consequences due to the felony charge."

Riccio testified that, if the petitioner received a sentence that did not include a period of incarceration, it would not be as easy for ICE to get custody of the petitioner to deport him. Riccio stated that he had "said to [the petitioner] on a couple of occasions that it's easier for immigration to, essentially, take custody of you and deport you if you're in custody because they

simply have to put on a hold versus someone who's not in custody, immigration can't put an automatic hold on a person." Riccio further testified that the petitioner was "concerned and worried" about both jail and deportation and that he "[could not] say that one was more concerning for him than the other." Riccio stated that, after the petitioner entered his guilty plea, but before he was sentenced, he did not bring up the idea of deportation because "[it] was completely understood by him. That's why we didn't talk about it as much as the jail aspect, because it was not a variable, [it] really wasn't . . . anything that could be controlled with an aggravated felony conviction."

The petitioner testified that, since he had moved to the United States in 2006, he had not been back to visit Jamaica and that most of his family did not live in Jamaica. The petitioner was then asked about the e-mails in which Riccio stated that a conviction for the crimes with which he was charged would "likely" result in his deportation. He testified that he understood that advice to mean: "Basically . . . if I do plead to it, it's a chance or maybe a possibility that I could be deported." He then testified that "likely" has a different meaning than "mandatory," which he understood to mean "certain . . . no ifs, ands, or buts." He testified that, throughout the proceedings, he thought that there "was some type of chance of . . . not being deported, the way [Riccio] was making it seem in the e-mails." On cross-examination, he was asked if he "thought to ask . . . Riccio to explain or to clarify the immigration consequences that [Riccio] mentioned," to which he responded, "No." The petitioner testified that he had "no idea" that deportation was mandatory and that, had Riccio told him that pleading guilty meant agreeing to mandatory deportation, he would have "rather [taken] the full risk" of going to trial. He testified that he thought that, by pleading guilty, he would have served nine months in prison and gone home to "restart" his life.

The petitioner then testified that, on the day that evidence was set to begin, Riccio received the department's report and was "shocked" by the information contained therein. The petitioner testified that he thought Riccio already had seen the report and that Riccio's reaction to it "helped to reverse [his] decision" about going to trial. He stated that, prior to Riccio receiving the report, he was "bullheaded" about having a jury trial "regardless of whatever was going to happen." He later testified that jail was "kinda sorta" a concern for him.

The petitioner acknowledged that, at the hearing at which he entered his guilty plea, Judge Devlin informed him that a conviction "may well have the consequences of your deportation or exclusion from admission to the United States or denial of naturalization as a [United States] citizen," and that, when asked if he understood,

he responded, "Yes, sir." He testified that he did not understand that statement by the court to be referencing mandatory deportation. At the sentencing hearing, he asked Judge Devlin to "just grant at least a little bit of leniency . . . and just give me the probation." When asked about this statement at the habeas trial, the petitioner testified that he thought the court might have had the power "to be lenient on immigration."

On March 11, 2020, in a memorandum of decision, the habeas court denied the amended petition for a writ of habeas corpus. Although the court concluded that Riccio's performance was deficient, it concluded that the petitioner failed to demonstrate that he was prejudiced by the deficient performance. The court first analyzed the petitioner's claim that Riccio failed to advise him unequivocally that pleading guilty would subject him to mandatory deportation and removal from the country. The court found that "Riccio failed to clearly and unambiguously convey to the petitioner the certainty of his deportation in terms the petitioner could understand."[7] Accordingly, the court found that "the petitioner ha[d] demonstrated that . . . Riccio's misadvice regarding the immigration consequences of the plea agreement constituted deficient performance."

The habeas court next analyzed whether the petitioner was prejudiced by Riccio's deficient performance. The court looked to Riccio's testimony at the habeas trial that the petitioner was concerned about jail but also with immigration consequences. The court also looked to Riccio's testimony that his advice to the petitioner about proceeding to trial changed when (1) he received the department's report in which the petitioner's account of the events corroborated the victim's account, and (2) the victim and her mother appeared at court prepared to testify against the petitioner. Riccio testified that, although the strength of the state's case improved dramatically at that point, the state's plea offer improved for the petitioner. The state's revised plea offer included the potential for a fully suspended sentence, and Riccio testified that he recommended that the petitioner accept the offer, rather than proceed to trial, where, "[had] he . . . lost, he probably would have gotten a thirty year sentence . . . ."

The habeas court then looked to the petitioner's testimony at the habeas trial that he was willing to go to trial, that he was willing to spend more time in prison to avoid deportation, and that Riccio's reaction to the department's report changed his mind about accepting the plea offer. The court also looked to the petitioner's testimony that the potential for a fully suspended sentence with the plea offer did not impact his decision to plead, that jail was "kinda sorta" a concern, and that his request for leniency at his sentencing pertained to immigration consequences and not to jail time. The court stated that it "[did] not credit the petitioner's

testimony as to these matters."

The habeas court further stated: "It is undisputed that, had the petitioner proceeded to trial, he would have faced 160 years [of] incarceration, including a seven year mandatory minimum period of incarceration.[8] The court credits Riccio's testimony that the petitioner was very much concerned about jail. The court credits the petitioner as to his belief that the victim did not want to testify and that her mother did not believe her. This belief corroborates Riccio's testimony that he initially believed that the state did not have a strong case. This view further corroborates Riccio's testimony that he became aware that the strength of the state's case increased dramatically on his receipt of the [department's report] and the victim and her mother appearing at court to testify. The court credits Riccio's testimony that he advised the petitioner to accept the revised plea offer, rather than risk a significant period of incarceration, which may have included a mandatory minimum period of incarceration. It is further undisputed that the state offered the petitioner a total effective sentence of ten years' incarceration, with a right [for the state] to argue for up to four years or [for the petitioner to argue] as low as a fully suspended sentence, followed by ten years' probation. . . . In the petitioner's allocution at his sentence hearing, he asked the sentencing court to 'grant at least a little bit of leniency on me within this and just give me the probation.' . . . Having considered all of the testimony and exhibits presented at trial, the court finds that the petitioner chose to accept a plea offer with the potential for a fully suspended sentence instead of risking a significant period of incarceration at trial. The court further finds that, had the petitioner known the certainty of his deportation he, nonetheless, would have accepted the state's plea offer to avoid a lengthy jail sentence. Therefore, the petitioner has failed to present sufficient credible evidence to demonstrate that there is a reasonable probability that, absent counsel's failure to advise him in accordance with *Padilla* [v. *Kentucky*, 559 U.S. 356, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010)], he would have rejected the state's plea offer and elected to go to trial. As a result, the petitioner has failed to demonstrate that he suffered prejudice as a result of counsel's deficient performance." (Footnote added.)

On May 13, 2020, the habeas court granted the petition for certification to appeal. This appeal followed. Additional facts and procedural history will be set forth as necessary.

We begin by noting the legal principles and the standard of review relevant to the petitioner's claim. "A claim of ineffective assistance of counsel is governed by the two-pronged test set forth in *Strickland* v. *Washington*, [466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)]. Under *Strickland*, the petitioner has the

burden of demonstrating that (1) counsel's representation fell below an objective standard of reasonableness, and (2) counsel's deficient performance prejudiced the defense because there was a reasonable probability that the outcome of the proceedings would have been different had it not been for the deficient performance. . . . For claims of ineffective assistance of counsel arising out of the plea process, the United States Supreme Court has modified the second prong of the *Strickland* test to require that the petitioner produce evidence that there is a reasonable probability that, but for counsel's errors, [the petitioner] would not have pleaded guilty and would have insisted on going to trial. . . . An ineffective assistance of counsel claim will succeed only if both prongs [of *Strickland*] are satisfied." (Internal quotation marks omitted.) *Flomo* v. *Commissioner of Correction*, 169 Conn. App. 266, 277–78, 149 A.3d 185 (2016), cert. denied, 324 Conn. 906, 152 A.3d 544 (2017).

"A claim of ineffective assistance of counsel raised by a petitioner who faces mandatory deportation as a consequence of his guilty plea is analyzed more particularly under *Padilla* v. *Kentucky*, [supra, 559 U.S. 356], a case in which the United States Supreme Court held that counsel must inform clients accurately as to whether a guilty plea carries a risk of deportation. . . . *Padilla* recently was analyzed under Connecticut law in *Budziszewski* v. *Commissioner of Correction*, 322 Conn. 504, 507, 142 A.3d 243 (2016), where our Supreme Court concluded that, although there are no precise terms or one-size-fits-all phrases that counsel must use . . . [i]n circumstances when federal law mandates deportation . . . counsel must unequivocally convey to the client that federal law mandates deportation as the consequence for pleading guilty. . . .

"To satisfy the prejudice prong, the petitioner had the burden to prove that, absent counsel's alleged failure to advise him in accordance with *Padilla*, it is reasonably probable that he would have rejected the state's plea offer and elected to go to trial. . . . In evaluating whether the petitioner had met this burden and evaluating the credibility of the petitioner's assertions that he would have gone to trial, it [is] appropriate for the court to consider whether a decision to reject the plea bargain would have been rational under the circumstances." (Citations omitted; internal quotation marks omitted.) *Noze* v. *Commissioner of Correction*, 177 Conn. App. 874, 885–86, 173 A.3d 525 (2017).

"The [ultimate] conclusions reached by the [habeas] court in its decision [on a] habeas petition are matters of law, subject to plenary review. . . . [When] the legal conclusions of the court are challenged, [the reviewing court] must determine whether they are legally and logically correct . . . and whether they find support in the facts that appear in the record. . . . To the extent that factual findings are challenged, this court cannot

disturb the underlying facts found by the habeas court unless they are clearly erroneous. . . . [A] finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Flomo* v. *Commissioner of Correction*, supra, 169 Conn. App. 278–79.

When a petitioner challenges the factual findings of the habeas court, "[t]his court does not retry the case or evaluate the credibility of the witnesses. . . . Rather, we must defer to the [trier of fact's] assessment of the credibility of the witnesses based on its firsthand observation of their conduct, demeanor and attitude. . . . The habeas judge, as the trier of facts, is the sole arbiter of the credibility of witnesses and the weight to be given to their testimony." (Internal quotation marks omitted.) *Sanchez* v. *Commissioner of Correction*, 314 Conn. 585, 604, 103 A.3d 954 (2014). A "pure credibility determination" made by a habeas court is "unassailable." *Breton* v. *Commissioner of Correction*, 325 Conn. 640, 694, 159 A.3d 1112 (2017).

In the present case, the habeas court found that Riccio's performance was deficient. Consequently, the petitioner challenges only the habeas court's conclusion regarding the prejudice prong of the *Strickland* test. He argues that his testimony at the habeas trial demonstrated that there was a reasonable probability that, in the absence of Riccio's failure to advise him that his guilty plea would result in mandatory deportation, he would have rejected the state's plea offer and elected to go to trial. He states that he "testified unequivocally that he did not want to be deported." He contends that both he and Riccio testified that, at all times prior to pleading guilty, he was "adamant that he wanted to go to trial." He argues that he accepted the plea offer in part because of Riccio's advice that there would be a slightly lesser risk of deportation if he received a sentence that did not include incarceration. The petitioner states: "Given the ties [he] had to the United States, his family, his community, and his future, and the lack of family in and ties to Jamaica, it was rational for [him] to be willing to reject the plea offer and risk going to trial." We reject these arguments, as they fail to demonstrate that the factual findings underlying the court's conclusion that the petitioner had not proven prejudice are clearly erroneous.

The conclusion of the habeas court that the petitioner had not satisfied the prejudice prong of *Strickland* is supported by evidence in the record that the court found to be credible. Contrary to the petitioner's argument on appeal that his primary concern was deportation, Riccio's testimony, which the court deemed credible, was that the petitioner was also concerned about the

risk of incarceration. The state's case against the petitioner was strong, and he faced a substantial period of incarceration if found guilty at trial. Riccio testified that the state's case was strengthened significantly by the department's report and the fact that the victim was present in the courthouse in order to testify on the day evidence was to begin. Although the state's case against the petitioner appeared strong, its plea offer actually improved after the petitioner rejected its initial offer. In fact, the state's new plea offer, which the petitioner ultimately accepted, contained no mandatory minimum prison sentence and allowed him potentially to avoid incarceration altogether. In Riccio's experience, he could not recall a time in which a client in a similar circumstance had received such leniency from the state. Had the petitioner proceeded to trial and lost, he would have faced a maximum sentence of 160 years of incarceration and a mandatory minimum sentence of three years. Riccio testified that he thought it was likely that the petitioner, if convicted, would have received a sentence of thirty years.

The court did not find credible the petitioner's testimony that he would have risked receiving substantially more jail time had he known that pleading guilty to violating § 53-21 (a) (2) would have subjected him to mandatory deportation. As the court set forth in its memorandum of decision, up until the day that evidence was set to begin, the petitioner felt strongly about his case because he did not think the victim would testify against him, but several events that day changed his mind. First, he became aware that the victim was at the courthouse and, thus, was going to testify. Second, he learned that Riccio saw the department's report for the first time and that it changed Riccio's assessment of the strength of the state's case. In fact, the petitioner testified that Riccio's reaction that day to the department's report "helped to reverse [his] decision" about going to trial. Third, the state offered him a plea agreement that was better than the one he previously had rejected. In light of the overwhelming strength of the evidence against him, which increased the likelihood that he would be found guilty at trial, thereby exposing him to a drastically higher term of incarceration, it would not have been rational for the petitioner to reject the state's improved plea offer.

The court's assessment of the petitioner's testimony at the habeas trial amounts to a "pure credibility determination," which is "unassailable." *Breton* v. *Commissioner of Correction*, supra, 325 Conn. 694. Furthermore, in reaching its decision, the court was permitted to consider whether, under the circumstances, the petitioner rationally would have rejected the plea offer had he known that accepting it would result in mandatory deportation. Our independent review of the record reveals that the court's findings were supported by evidence presented at the habeas trial. We therefore con-

clude that the habeas court's conclusion that the petitioner was not prejudiced by Riccio's performance is supported by the evidence. Accordingly, the petitioner cannot prevail on his claim that the habeas court improperly concluded that he had failed to satisfy the prejudice prong of *Strickland*.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The allegations were made after the victim's mother found text messages from the petitioner on the victim's phone. As a result of the victim's allegations, the Department of Children and Families conducted an investigation, which led to the petitioner's arrest.

[2] General Statutes § 53a-71 (b) provides in relevant part that sexual assault in the second degree is a class B felony if the victim is under sixteen years of age, "and any person found guilty under this section shall be sentenced to a term of imprisonment of which nine months of the sentence imposed may not be suspended or reduced by the court." A violation of General Statutes § 53-21 (a) (2) is also classified as a class B felony.

General Statutes § 53a-35a provides in relevant part: "For any felony . . . the sentence of imprisonment shall be a definite sentence and, unless the section of the general statutes that defines or provides the penalty for the crime specifically provides otherwise, the term shall be fixed by the court as follows . . . (6) For a class B felony . . . a term not less than one year nor more than twenty years . . . ."

For each of the four counts under § 53a-71 (a) (1), the petitioner faced a mandatory minimum term of nine months of incarceration and a maximum term of twenty years of incarceration. For each of the four counts under § 53-21 (a) (2), the petitioner faced a maximum term of twenty years of incarceration.

[3] The petitioner also claimed in his amended petition that Riccio (1) "failed to adequately research the legal issue of the petitioner's immigration status and the probability of [adverse immigration consequences resulting from] the plea agreement"; (2) "inaccurately advised the petitioner that the plea offer included a lesser risk of deportation, because there was a chance that the petitioner would receive a fully suspended sentence, which lessened the likelihood that immigration authorities would take action to have the petitioner deported"; (3) "failed to impress upon the petitioner that, once federal authorities apprehended him, deportation was practically inevitable"; (4) "failed to adequately make the petitioner's immigration status and the probability of deportation, removal, and inadmissibility for reentry, part of the plea bargaining process with the prosecuting authority and the judicial authority"; and (5) "failed to negotiate a plea offer with more favorable immigration consequences." In the present appeal, the petitioner does not challenge the court's findings and conclusions as to those claims.

[4] The petitioner testified from Jamaica using videoconferencing technology.

[5] Conlon testified regarding the immigration consequences of pleading guilty to a violation of § 53-21 (a) (2). He testified that "it's pretty clear" that a conviction under § 53-21 (a) (2) constitutes an "aggravated felony," which would make someone convicted under that statute "100 percent deportable." He testified that, after reviewing the petitioner's case, he concluded that "[t]here was no viable legal argument to challenge . . . the grounds of removal charged by the immigration service." He further testified that it would not be accurate to advise someone in the petitioner's position that he would "likely" be deported for pleading guilty to such a crime because "[i]t's certain that the person will be found deportable."

[6] Relis testified regarding the ground for the petitioner's deportation and stated that the petitioner was deported because of his conviction under § 53-21 (a) (2), which constituted an aggravated felony. She further testified that she did not know of any other basis on which he could have been deported.

[7] The habeas court rejected the first three claims in the amended petition. Specifically, the court found that "[t]he petitioner failed to present any credible evidence that . . . Riccio failed to adequately research the petitioner's legal status and potential adverse immigration consequences." The court next stated that it "[could not] find that . . . Riccio failed to make the petitioner's immigration status and immigration consequences a part of the

plea bargaining process." The court then stated that it "[could not] find that . . . Riccio failed to negotiate a plea agreement with more favorable immigration consequences for the petitioner."

In light of the court's finding that Riccio failed to advise the petitioner unambiguously of the immigration consequences of pleading guilty, the court declined to analyze the petitioner's remaining two claims that Riccio rendered deficient performance (1) by inaccurately advising him that the plea agreement exposed him to a lesser chance of deportation because it included the possibility of a fully suspended sentence, and (2) by failing to advise him that deportation was practically inevitable if he were apprehended by federal authorities. As previously noted, the petitioner does not challenge the court's findings and conclusions as to these claims.

[8] The habeas court mistakenly stated that the petitioner faced a seven year mandatory minimum period of incarceration if he proceeded to trial. In making this misstatement, the court presumably relied on Riccio's testimony stating such. Additionally, in multiple e-mails from Riccio to the petitioner, which were entered into evidence, Riccio listed the charges against the petitioner and the potential sentence for each. Riccio stated that each of the four counts under § 53a-71 (a) (1) carried with it a nine month minimum period of incarceration, and that each of the four counts under § 53-21 (a) (2) carried with it a one year minimum period of incarceration. He stated that, in total, the petitioner faced a seven year mandatory minimum period of incarceration. Under § 53-21 (a) (2), however, there is no mandatory minimum period of incarceration when the victim is thirteen years of age or older. Thus, the petitioner only faced a three year mandatory minimum period of incarceration for the four counts under § 53a-71 (a) (1). The court's misstatement does not affect our analysis of the petitioner's claim, nor does the petitioner rely on it in making his argument.